### BOUKNIGHT v. CHARLOTTE &c. R. R. COMPANY.

1. ACTION FOR DAMAGES—ELECTION.—The complaint for damages in this case did not state two causes of action between which the plaintiff could be required to elect, especially after plaintiff's declaration in open court that no punitive damages were sought.

2. IBID.—NON-SUIT—CONTRIBUTORY NEGLIGENCE.—The complaint in this case stated a cause of action for injuries done to plaintiff by the defendant railroad company by a collision of cars while plaintiff was standing on the platform of an overcrowded train. And there being testimony tending to prove the charge, and contributory negligence being a question for the jury, a non-suit was properly refused.

3. EVIDENCE—RELEVANCY.—This court will not declare error in the admission of testimony to show that an excursion train was crowded as it went into a terminus, where plaintiff complains of an injury resulting from the want of proper accommodation for the return of the excursionists, and where the facts objected to were testified to by other witnesses without objection.

4. PASSENGER ON PLATFORM—CONTRIBUTORY NEGLIGENCE.—There was no error in refusing to charge that getting on the platform of a running train is *prima facie* negligence, where contributory negligence, under the facts of this case, was properly declared and the question left to the jury.

5. RAILROAD—LEASE—TORTS—OTHER LINES.—A railroad company that has leased its road and all of its property, easements, licenses, &c., to another company is liable for injuries negligently done to a passenger on a train operated by the lessee in the union depot of another road used by the lessor under license from the owner before the lease, and continued to be used by the lessee after the lease without further license from the owner.

Before WITHERSPOON, J., Edgefield, March, 1893.

The complaint alleged the incorporation of defendant and that it was a common carrier between Charlotte, N. C., and Augusta, Ga., through Edgefield County, and had leased its road to the Richmond and Danville Railroad Company. That on the morning of November 24, 1891, he paid for a round trip

ticket from Trenton, on said road, to Augusta, and was safely carried to Augusta.    The complaint continued:

7. That a short time before the hour fixed for the departure of the train of the said Richmond and Danville Railroad Company from the said city of Augusta, on the said day, the plaintiff proceeded to the Union Depot, in the said city of Augusta, its starting point, and on his arrival there found that the said Richmond and Danville Railroad Company, its agents, servants, and employees, had carelessly, negligently, and in utter disregard of the comfort and safety of the great concourse of passengers then and there assembled for passage on said train, failed to provide sufficient coaches to receive and accommodate the said passengers, so that the plaintiff was unable to obtain a seat or standing room on said train for himself and his wife, who accompanied him.    8. That the plaintiff placed his wife in the "parlor car" or "sleeping coach," attached to said train, but was himself not allowed to have a seat or to remain therein.    9. That the plaintiff was informed by the conductor in charge of said train that two other coaches would be added for the accommodation of the passengers then and there assembled; relying upon which statement of said conductor, the plaintiff stood in waiting near said train.    10. That while the plaintiff was thus standing and waiting for the attachment of additional coaches for the accommodation of the numerous passengers then and there assembled, the said train, without any notice or warning whatsoever, moved off; thereupon the plaintiff, believing that said train had departed for its destination, and that the additional coaches would be taken on at the yard of the defendant company, a short distance below, mounted the front platform of said "parlor car" or "sleeping coach," attached to said train, and for his security seized the railing around said platform.    11. That the said Richmond and Danville Railroad Company, its servants, agents, and employees, were then and there so careless and negligent, and so recklessly disregardful of the safety and comfort of the great crowd of passengers then on board, that after moving a short distance the said train suddenly stopped, and immediately moved backward with great rapidity, until it

came into collision with other coaches standing upon said track with such force and violence as to break plaintiff's hold upon said railing, and threw him around, and caused his foot to go between the platform of said "parlor car" and the platform of the coach immediately ahead, and there caught the right foot, and mashed, bruised, and lacerated the same, and wrenched and permanently injured his back, and divers other injuries to the plaintiff then and there did. 12. That by reason thereof, the plaintiff became for a long time painfully and dangerously ill; was subjected to great expense in endeavoring to cure himself of said injuries; was compelled, for the preservation of his life, to have his right foot amputated near the instep thereof, and has thereby become a cripple; and prevented for life from actively pursuing and attending to his business, so that he will never again be as strong and able to carry on the same as efficiently and as profitably as before; and was otherwise greatly injured, to his damage twenty-five thousand dollars.

*Mr. B. L. Abney*, for appellant.

*Messrs. Sheppard Bros., Twiggs & Verdery*, and *Fleming & Alexander*, contra.

July 3, 1894.   The opinion of the court was delivered by

MR. JUSTICE McGOWAN.   This action was brought by the plaintiff, J. H. Bouknight, to recover damages against the defendant, the Charlotte, Columbia and Augusta Railroad Company, for personal injuries and suffering, which he alleges he has sustained by the carelessness and negligence of the defendant company while a passenger on its train. The Circuit Judge summarizes the general facts as follows: "The plaintiff submits but one cause of action, but one ground of complaint—that on November 24, 1891, in the city of Augusta, while standing on the front platform of the parlor car, or sleeping car, attached to the train of the defendant's road, leased by the Richmond and Danville Company, through the carelessness, as alleged, of the employees of the Richmond and Danville Company, lessees, there was a collision between the

27—41

cars, where the defendant was standing on the platform, and other cars to be attached to said train, and that in said collision the plaintiff had his right foot so badly crushed and mangled as to necessitate amputation of a part of it. He also alleges that in consequence of that collision his back was wrenched; that he is permanently injured; that he was confined for a long time, and has suffered great pain, as the result of this collision, in body and mind." Wherefore, he demands judgment for twenty-five thousand dollars against the defendant.

The defendant, the Charlotte, Columbia and Augusta Railroad Company, answered, denying that the plaintiff received the injury complained of through the negligence and carelessness of the railroad employees, and alleges that plaintiff received the injury complained of through and by reason of his own contributory negligence in failing to observe the instructions of the conductor of the said train to remain upon the ground until the cars were attached. And that the defendant, the Charlotte, Columbia and Augusta Railroad Company, on May 1st, 1886, *had leased* this road to the Richmond and Danville Railroad Company, a corporation of the State of Virginia; and that thereupon, and after said date, the said Richmond and Danville Railroad Company took possession of the property and franchises so *leased* to it, and, at the times mentioned in the complaint, was in the full and complete control and management of said property and franchises, and this defendant has had nothing whatever to do with the same, and has only maintained its corporate organization, and nothing more, &c.

At the trial, and before plaintiff's counsel had read the complaint, the defendant's counsel moved for an order requiring the plaintiff to *elect* upon what cause of action of his complaint he would proceed, there appearing, as alleged upon the face of the complaint, several causes of action, which were improperly blended in one statement. The presiding judge refused the motion, stating that as counsel had admitted that no claim for punitive damages would be made, he did not consider that two causes of action had been stated in the complaint. The complaint was then read to the jury, and thereupon the defend-

ant interposed an oral demurrer to the same, that it did not state facts sufficient to constitute a cause of action against *the defendant.* The presiding judge overruled the demurrer, and required the defendant to proceed to trial.

Then the testimony was offered, which is all printed in the Brief. When the plaintiff rested, the defendant's counsel moved for a non-suit, which was refused. The defendant made a number of "requests" to charge; but as they are unusually long, and most of them were charged, it will not be necessary to consider them, except in so far as specific objections appear in the exceptions filed. Under a very full and careful charge, the jury found a verdict for the plaintiff for thirteen thousand one hundred and twenty-five dollars. A motion for a new trial on the minutes of the court was made, and a new trial *nisi* granted—that is to say, unless within a certain time the plaintiff should remit on the record all above the sum of *ten thousand dollars.* The plaintiff did remit, as required, all of said verdict except the aforesaid sum of ten thousand dollars. From this judgment so rendered, the defendant corporation appeals to this court upon numerous exceptions, which are all in the Brief.

Exception 1 complains that the Circuit Judge erred in not requiring the plaintiff to *elect* between what was termed two causes of action contained in the complaint. We concur with the judge, that there was really but one cause of action, to wit: the alleged negligence of the servants of the railroad company in connection with the collision of the coaches; especially after the declaration was made in open court, that no punitive damages were sought, which, in effect, was an election, if there were two causes of action, as claimed.

Exceptions 2 and 3 claim that the judge erred in not sustaining the *oral demurrer*, and the motion for *non-suit* for the lack of evidence. We cannot doubt that the complaint sets out a good cause of action against the railroad company, which in law is liable. As to the non-suit: this court has often ruled that a non-suit is only proper "when there are no facts tending to prove the charge." "Contributory negligence is a matter of defence, which cannot be considered under a motion for a non-suit for lack of evidence."

Exceptions 4 and 5 charge error in admitting the testimony of Bouknight and Ready as to the condition of the cars, whether crowded or not, when they were going towards Augusta, on the morning of the accident. The relevancy of testimony must necessarily be left somewhat to the control of the trial judge. It may be that the bearing of the testimony in question had slight connection with the actual collision of the coaches at the Union Depot in Augusta, but we cannot say that it had none. It showed, at least, that the railroad officials had notice of the large number of passengers that had to be provided for. Besides, in any view, the evidence was harmless as there was other testimony to the same effect, to which there was no objection. Conductor Allison, in charge of the train, testified that "going down that morning he had seven coaches, and that he found passengers standing upon the platform, trying to get seats," &c. The judge confined the issue to the question of negligence in connection with the actual collision of the cars in the city of Augusta.

Exceptions 8 and 9 complain of error in the judge, "that he did not charge that certain acts, such as the getting upon the platform of a running train, is *prima facie* negligence; and to relieve a person from the consequences of such an act, he must show such circumstances, brought about by the railroad company, as will show that it necessitated the person to take such position," &c. The judge carefully left the matter of contributory negligence to the jury as follows: "Did Mr. Bouknight exercise ordinary care upon that occasion, having reference to the surrounding circumstances? If he did, then he did not contribute to his injury; but if he failed to exercise such ordinary care or prudence, and was injured by the result, then he cannot recover," &c. We see no error here.

Exceptions 6 and 10 complain of error in refusing to charge the defendant's first request; and substantially make the question, that the Charlotte, Columbia and Augusta Railroad Company, the defendant, is not liable to the plaintiff, for the reason that said company had previously *leased* its property, franchises, &c., to the Richmond and Danville Railroad Company, which, if any, is the company liable. After

the repeated decisions of this court upon this subject, we can hardly think that it is necessary for us to go again into the argument.   In *The National Bank* v. *Railway Company,* 25 S. C., 216, this court held: "That a railroad company chartered by the State does not, by leasing its road to another corporation, relieve itself from liability for goods received by its line for carriage, and not delivered.   The lessor continued to be liable for acts done by the lessee in operating the road, whether the cause of action be *ex delicto or ex contractu,*" &c.   In *Harmon* v. *C. & G. Railroad Company,* 28 S. C., 405, under a right given in its charter to "let" or "farm out" any of their exclusive rights of transportation of persons, merchandise, and produce, with their privileges, leased its road to another company.  *Held,* that the lessor did not, by leasing its road, relieve itself from its obligations to the public, and that it was liable for cattle negligently killed by a train of cars operated by the lessee. See 70 Ga., 464, and 84 U. S., 450; Passenger Carriers, 544 and 548; 19 Am. & Eng. Enc. Law, page 900, and notes.

But assuming that this doctrine is settled in this State, as to injuries inflicted on the road proper of the lessor company, exceptions 7 and 11 make the further question that the Charlotte, Columbia and Augusta Railroad Company is not liable to the plaintiff, for the reason that the injury complained of occurred at a point beyond the terminus proper of its own line, just across the Savannah River at Reynolds street.   To be able to understand this point clearly, it will be necessary to make a short statement.   The Charlotte, Columbia and Augusta Railroad Company was chartered by the State of South Carolina, to extend "from &c. to or near the town of Hamburg, in the State of South Carolina, and (if the said company shall be chartered by the State of Georgia) to cross the Savannah River at or near the city of Augusta, in the State of Georgia, and to connect with the Georgia Railroad in the said city of Augusta." It is admitted that this charter was granted by the State of Georgia.   There was testimony tending to show that the railroad crossed the river into the State of Georgia, and had its terminus at Reynolds street, some three-fourths of a mile short of the Georgia Railroad and the Union Depot in the city of

Augusta; but that under an arrangement with the street car company, the Charlotte, Columbia and Augusta Company (jointly with the South Carolina Railroad Company) maintained a track from Reynolds to McIntosh street, with the right to cross the same, and carry their engines and cars "on into the Union Depot by license of the Georgia Railroad Company," &c.

This was the established condition of the matter from 1870 until May 1, 1886, when the Charlotte, Columbia and Augusta Company *leased* their road to the Richmond and Danville Company, the lease containing, among others, these terms: "Together with all franchises, additions, sidings, and turnouts thereof, now owned or which may be hereafter acquired, and all rails, * * rights of way, * * station offices, depots, * * tracks, and all lands and hereditaments whatsoever of the said railroad now owned, or which may hereafter be acquired, and which are now or may at any time hereafter be used for the purpose of operating the said railway or conducting the business thereof, * * and all the rolling stock, and corporate rights, privileges, functions, * * of said company of any kind, and all streets, ways, *easements*, permits, licenses, liberties, and appurtenances whatsoever," &c.   It appeared that under this lease the Richmond and Danville Company took possession of all the property, rights, and easements of the leasing company, and operated and used them in the same way and manner as the Charlotte, Columbia and Augusta Company had done before the execution of the lease, and was so using and operating the aforesaid track near the Union Depot for passengers, when the plaintiff received the injuries complained of, &c.

His honor, the presiding judge, charged as follows: "If you believe from the evidence that at the time the Richmond and Danville Company leased the Charlotte, Columbia and Augusta Road, that the former had the privilege of going into the Union Depot, a privilege from the Georgia Railroad or the proper authorities there to go in under that shed of the Union Depot, to use the track there, and that under this lease they continued to exercise that privilege, just as the Charlotte, Columbia and Augusta Company had done, and there was no break at all in the arrangement, then I charge you that the Charlotte, Colum-

bia and Augusta Railroad is liable for the acts of the Richmond and Danville, if you find that the Richmond and Danville or its employees are liable. That is a question of fact, which I submit to you from the testimony," &c. The Circuit Judge left it to the jury to determine as a matter of fact, whether the same arrangement made with the Charlotte, Columbia and Augusta Company before the lease, was continued with the Richmond and Danville Company after the lease, and by their verdict they must have found that there was no "break in the arrangement;" and it follows that the license used by the Richmond and Danville Company was derived through the lease of the Charlotte, Columbia and Augusta Railroad Company.

The judgment of this court is, that the judgment of the Circuit Court be affirmed, and the appeal dismissed.