CENTRAL TRUST CO. OF NEW YORK v. CHARLOTTE, C. & A. R. CO. et al. (BOUKNIGHT, Intervener).

(Circuit Court, D. South Carolina. December 31, 1894.)

**1. CONSTITUTIONAL LAW—OBLIGATION OF CONTRACTS—JUDGMENT LIEN—SOUTH CAROLINA STATUTE.**

B. recovered a judgment, in South Carolina, for personal injuries, against the C. R. Co., a corporation chartered by the states of North Carolina, South Carolina, and Georgia, and owning a line of road running through the three states. Long before the accident causing the injury, the railroad company had mortgaged its road, to secure an issue of bonds, and the mortgage had been duly recorded. It had also leased its road to another company, which was operating it when the accident happened. A statute of South Carolina, in force when the mortgage was made, provided that, when a cause of action against a railroad corporation for personal injuries should be prosecuted to judgment, the judgment should relate back to the date when the cause of action arose, and be a lien as of that date, of equal force with the lien of employés for wages, and should take precedence of any mortgage given to secure bonds. The mortgage having been foreclosed, B. intervened, asking for payment of his judgment in advance of the bonds. *Held,* that the statute referred to, having been in force when the mortgage was made, and so having entered into and become a part of the contract, was valid, and did not displace or impair the lien of the mortgage.

**2. SAME—LIABILITY OF RAILROAD CORPORATION FOR ACTS OF LESSEE.**

*Held,* further, that the judgment recovered by B. was entitled to the protection of the statute, the South Carolina court having jurisdiction of the subject-matter, though the accident occurred in Georgia, and the C. R. Co. being responsible, under the law of both South Carolina and Georgia, for all acts of its lessee unless specially released from such responsibility by the legislature and no such release appearing in this case.

**3. SAME—EFFECT OF JUDGMENT.**

*Held,* further, that the trustees of the mortgage had no right to be made parties to B.'s suit for damages, and the judgment in such suit was conclusive as against them, if the court had jurisdiction, and in the absence of fraud or collusion.

This was a suit by the Central Trust Company of New York against the Charlotte, Columbia & Augusta Railroad Company and others for the foreclosure of a mortgage. After a sale of the road, Joseph H. Bouknight intervened, asking payment of a judgment against the railroad company.

Sheppard Bros., E. F. Verdery, and Fleming & Alexander, for petitioner.

Henry Crawford, for defendants.

SIMONTON, Circuit Judge. This is an intervention by petition, praying payment of a judgment obtained against the Charlotte, Columbia & Augusta Railroad Company for personal injuries. The petitioner asks that his judgment be declared a lien superior to that of the first mortgage upon the property of the said company. As this mortgage has been foreclosed under the order of this court, the purchaser at the sale has come in, and resists the prayer of the petition. Secor v. Singleton, 41 Fed. 728. The cause has been heard on the pleadings, the master's report, with the testimony, and on the exceptions duly filed thereto. The Charlotte, Columbia & Au-

gusta Railroad Company had its termini at Charlotte, N. C., and Augusta, Ga. It passed across the state of South Carolina, and by far the largest part of its track was in the last-named state. It was incorporated by the three states of North Carolina, South Carolina, and Georgia, under the same corporate designation, owned all the property, and was in practical effect one corporation. In 1886, the Charlotte, Columbia & Augusta Railroad Company, styling itself a "corporation," created by and organized under the laws of North Carolina, South Carolina, and Georgia, leased all of its franchises and property in the three states, including the whole line of railway "from Augusta to Charlotte," constituting 191 miles of "continuous railway," to the Richmond & Danville Railroad Company. Thenceforward all the rolling stock on the road was owned and all of its operations were controlled and managed by the lessee company, whose agents, without interference on the part of the lessor, were in charge of all the business on the road. The Richmond & Danville Railroad Company, and all its property and leased lines, went into the hands of receivers in June, 1892; and the Charlotte, Columbia & Augusta Railroad Company was placed in the hands of receivers, at the instance of its own mortgage creditors, in July, 1893. When the lease above referred to was made, there was a mortgage upon all the property and franchises of the Charlotte, Columbia & Augusta Railroad Company, executed to secure certain bonds, bearing date July 1, 1883. The mortgage covered the property in the three states, and was duly recorded, according to law in South Carolina, in the several counties through which the road ran. When that mortgage was executed, there was on the statute book of the state of South Carolina (Gen. St. § 1528) the following provision of law:

"Whenever a cause of action shall arise against any railroad corporation for personal injury or injury to property sustained by any person, and such cause of action shall be prosecuted to judgment by the person injured, or his or their legal representatives, said judgment shall relate back to the date when the cause of action arose, and shall be a lien as of that date, of equal force and effect with the lien of employés for wages, upon the income, property and franchises of said corporation, enforcible in any court of competent jurisdiction by attachment or levy and sale under execution, and shall take precedence and priority of payment of any mortgage, deed of trust or other security given to secure the payments of bonds made by said railroad company: provided, any action brought under this section shall be commenced within twelve months from the time that said injury was sustained."

On 24th November, 1891, the petitioner purchased at Trenton, in South Carolina, a station on this road, a round-trip ticket from Trenton to Augusta and back, from the Richmond & Danville Railroad, the lessee; and on this ticket proceeded to Augusta, Ga. On his return, before the train had gone out of Augusta, he was injured in his person by the alleged negligence of the agents of the railroad company carrying him. He brought his action therefor against the Charlotte, Columbia & Augusta Railroad Company, in the court of common pleas for Edgefield county, S. C., within 12 months thereafter; and on the 18th March, 1893, obtained a verdict, subsequently entered in judgment in the sum of $10,000, and costs. An appeal was taken from this judgment to the supreme court of South Caro-

lina, and the judgment of the lower court was affirmed, after full hearing. 19 S. E. 915. This judgment roll was produced before the master. He reported in favor of the prayer of the petition. Exceptions were taken to his report. The cause has been exhaustively argued.

The first question is as to the validity of this provision of the statute law of South Carolina. It is said that practically it displaces, and to this extent renders null, a prior recorded lien. This section has never been construed by the court of last resort of the state, and this court must reach its own conclusion. All contracts are made with reference to the law of the state in which the subject-matter of the contract is, and in which the contract is made. This certainly is true with regard to mortgages by a railroad corporation. The law enters into and becomes a part of the contract, as if it were there in express terms. Brine v. Insurance Co., 96 U. S., at page 634; Insurance Co. v. Cushman, 108 U. S. 52, 2 Sup. Ct. 236. It is recognized in Provident Sav. Inst. v. Jersey City, 113 U. S. 506, 5 Sup. Ct. 612, and in Railroad Co. v. Hamilton, 134 U. S., at page 301, 10 Sup. Ct. 546. In this particular case the section which is under consideration is a part of the general law regulating railroad corporations. The provisions of the chapter are declared to be amendments of the charters of all railroad corporations theretofore created in this state. Gen. St. § 1416. This section restricts the power of railroad corporations to execute mortgages of the franchises and property to the extent that they cannot create a lien superior to that of judgments obtained against them for personal injuries incurred in the exercise of their franchises. See Mor. Priv. Corp. § 1120. When, therefore, the Charlotte, Columbia & Augusta Railroad Company, in 1883, entered into this first mortgage contract, and thereby covenanted with the trustee to give the bondholders, secured by the mortgage, a first lien on all of its property and franchises in South Carolina, this must mean subject to the law now of force in this state. And as the law of 1882, then in force, provided that certain judgments obtained whenever a cause of action shall arise against any railroad corporation shall have lien which shall take precedence of any mortgage, this provision entered into the mortgage contract. The lien of the mortgage is declared subordinate to such judgment liens; and, in accepting the mortgage under these circumstances, the mortgagee gives his assent to this. The lien of the mortgage is not displaced. It is defined and restricted with full notice to the mortgage creditor.

Is the judgment in question one of the class of judgments secured preference by this section of the General Statutes? Was it obtained in a court of competent jurisdiction, upon a cause of action for which the mortgagor was liable? The injury was received in the state of Georgia. The track upon which the injury was received was that of the Georgia corporation. The persons through whose negligence the injury was incurred were in the employment of the Richmond & Danville Railroad Company, and not under the control of the Charlotte, Columbia & Augusta Railroad Company. The petitioner was

carried upon a ticket issued by the Richmond & Danville Railroad Company, not of the mortgagor company. Under these circumstances, did the court which rendered this judgment have jurisdiction over the subject-matter and person in the suit?

Although the Charlotte, Columbia & Augusta Railroad Company held a charter from three states, and was incorporated by each, for the purposes of contracting, suing, and being sued, it is a single corporation in fact and in law. Mor. Priv. Corp. § 996; Stone v. Trust Co., 116 U. S. 307, 6 Sup. Ct. 334, 388, 1191; Graham v. Railroad Co., 118 U. S. 161, 6 Sup. Ct. 1009. The action is for a tort,—a transitory action,—and could be brought wherever the defendant could be served. The right of action was not confined to the territory of the state of Georgia where the injury was received. Dennick v. Railroad Co., 103 U. S., at page 18; Railroad Co. v. Babcock, 154 U. S. 196, 14 Sup. Ct. 978. The plaintiff in the action was a passenger, holding a return ticket from Trenton, in South Carolina, to Augusta. He was injured by the common carrier while in possession of that ticket, and on the train because of that ticket. But this carrier was the Richmond & Danville Railroad Company. The train and the agents on the train were in the control of that company, and not of the company defendant in the suit at law. Does this relieve the defendant? A railroad corporation accepting and operating under its charter assumes duties to the public. Among these, perhaps, the chief of them is the safe carriage of passengers and freight. The sanction for the performance of these duties is pecuniary responsibility to the parties injured. In consideration of the public grant, it contracts to exercise its privileges and perform these duties. When, therefore, instead of doing this itself, it, of its own volition, and for valuable consideration, executes a lease to another corporation substituting that other in its place, it cannot free itself from the obligations it has incurred without the consent of the power creating it. It cannot escape from responsibility for the acts of its lessee. Were it otherwise, the lessor would enjoy an income from the use of its franchises, and be free from the burdens which these franchises impose.

The Richmond & Danville Railroad Company were lessees for 99 years of all the property and franchises of the Charlotte, Columbia & Augusta Railroad Company. It is the settled law of South Carolina that a railroad company clothed with a franchise cannot escape the performance of the obligations arising from that franchise, or from the general law of the state, by a voluntary surrender of its property and franchise into the hands of a lessee. National Bank v. Atlanta, etc., Ry. Co., 25 S. C. 222; Harmon v. Railroad Co., 28 S. C. 404, 5 S. E. 835. In this case the lessor was held responsible for cattle killed by the negligence of the agents of lessee. Hart v. Railroad Co., 33 S. C. 427, 12 S. E. 9. This was an action against this same corporation, the Charlotte, Columbia & Augusta Railroad Company, for personal injuries received from the negligence of employés of the Richmond & Danville Railroad Company, its lessee, under the lease above referred to. Bouknight v. Railroad Co., 19 S. E. 915, the case at bar, in which, after a learned and exhaustive argument, reviewing

all previous cases, the court adhered to its previous rulings, and held the action well brought, confirming the judgment below. The same rule exists in Georgia. The original obligation of a railroad corporation to the public cannot be discharged except by legislative enactment, consenting to and authorizing the lease, with an exemption granted to the lessor company from liability. Legislative consent to the lease is not sufficient. There must be a release from the obligation of the company to the public. Singleton v. Railroad Co., 70 Ga. 471, 48 Am. Rep. 574, and notes; Railroad Co. v. Mayes, 15 Am. Rep. 678. The same doctrine is laid down by the supreme court of the United States in Railroad Co. v. Brown, 17 Wall. 450, affirmed in Railroad Co. v. Jones, 15 Sup. Ct. 136. There are authorities which take an opposite view, notably Arrowsmith v. Railroad Co., 57 Fed. 165. But the conclusion here reached is sustained in the courts of Georgia, where the cause of action arose, and in South Carolina, where the judgment was rendered. Apart from any general principle of law, an examination of the lease between the Richmond & Danville Railroad Company and the Charlotte, Columbia & Augusta Railroad Company will show that the lessee was conducting this road wholly in the interest of the lessor, and to this extent occupying the place of its operating agent. The covenants of the lease on the part of the lessee are that it will appropriate and apply the whole of the receipts, income, and revenues derived from the use and operation of the said demised lines to the purposes and in the manner following, that is to say: (1) To operating expenses, cost of new rolling stock, improvements and betterments on the property, payment of all claims and charges now or hereafter payable by the lessor growing out of the use of the property prior to the lease, premiums of insurance, and all taxes leviable on the property. (2) The payment of the necessary expenses, not exceeding $1,500 per annum, to keep up the corporate organization of the lessor. (3, 4, 5, and 6) Payment of interest on bonds secured by mortgages of the lessor, dated May 1, 1867, September 1, 1869, October 15, 1872, and the mortgage of July 1, 1883. (7) "Any and all residue of said receipts, income, and revenues remaining after each and every of the above mentioned and specified payments have been made shall be paid over to the said party of the first part (the lessor) and be by it applied to the payment of dividends upon its capital stock, as its board of directors may direct." "Qui sentit commodum sentire debet et onus."

In his clear and forcible argument, the counsel for the trustee of the first mortgage and the purchaser contended that this judgment does not come within that class of judgments protected by the South Carolina statute, and, even if it were such a judgment it cannot operate but as res inter alios acta, the trustees not being parties to the action; that they have the right to inquire into the facts on which the verdict was based, and upon such inquiry to set it aside. Sustaining his first proposition, he calls attention to the stress laid on the cause of action. Not only are these words used three times in the section, but the lien of the judgment is made to relate back to the date of the origin of the cause of action. The conclusion is that the statute confines itself to causes of action originating in this state.

This construction he contends is strengthened by the fact that the section is a part of the chapter prescribing regulations for the prevention of accidents, and concerning the responsibility therefor, all of which are local in their coloring. A suit can be maintained in South Carolina upon a cause of action originating in Georgia, and the Charlotte, Columbia & Augusta Railroad Company is liable to be sued in its corporate name in any of the states incorporating it. Wherever, by either the common law or the statute law of a state, a right of action has become fixed and legal liability incurred, that liability may be enforced and the right of action pursued in any court which has jurisdiction of such matters and can obtain jurisdiction of the parties. Dennick v. Railroad Co., 103 U. S. 18. In Railroad Co. v. Babcock, 154 U. S. 197, 14 Sup. Ct. 978, the action was for the death of a man killed on the railroad in Montana. The law of Montana gave a right of action. The suit was brought in Minnesota. Not only was the jurisdiction maintained, but the recovery was governed by the laws of Minnesota. The statute of South Carolina is very general in its terms: "Whenever a cause of action shall arise against any railroad corporation"; "and such cause of action shall be prosecuted to judgment,"—that is to say, judgment in this state. These are the only conditions,—a cause of action existing, cognizable in South Carolina; a suit thereon prosecuted to judgment in this state.

His second proposition is that this judgment is res inter alios acta, and can be challenged by those claiming under the mortgage. The cause of action upon which this judgment was had was cognizable only in a court of law. The proceedings were in a court of law. To these proceedings the mortgage trustees were not only not necessary parties; they would have been improperly made parties, and the joinder would have been demurrable. When the mortgagees took this mortgage, they did so with notice of the priority of this kind of judgment, obtainable only in this way,—a way in which they could not be parties,—and with that notice and its consequences they accepted the mortgage. But this does not deprive the mortgage creditor of his property without due process of law. When, in marshaling the assets of this insolvent railroad company, the mortgage creditors and those claiming through them are met by this judgment and its claim to priority, they have the right to examine it, to look into the cause of action, to ascertain when and where the action was brought, to know if the conditions of the law existing when their mortgage was executed have all been complied with. They have the right to inquire into the jurisdiction of the court, and, above all, they are entitled to know that there was no fraud or collusion or gross neglect in obtaining the judgment. But, when all these are established, this judgment, when duly pleaded and proved in the court of the United States sitting in South Carolina, has the effect, not only of prima facie evidence, but of conclusive proof of the rights thereby adjudicated. A refusal to give it force and effect in this respect, which it has in the state in which it was rendered, denies to the judgment creditor a right secured to

him by the constitution and laws of the United States.    Hunting-ton v. Attrill, 146 U. S. 685–686, 13 Sup. Ct. 224.

The judgment of the state court is produced in these proceedings, not in order to establish a demand against the mortgagees or their property, or to assail the validity of their mortgage, but for the purpose of showing that the claim of the petitioner comes within the protection of the South Carolina statute.    It is entitled to full faith and credit.    "When such a judgment is presented to the court for affirmative action, while it cannot go behind the judgment for the purpose of examining into the validity of the claim, it is not precluded from ascertaining whether the claim is really one of such a nature that the court is authorized to enforce it."    Wisconsin v. Pelican Ins. Co., 127 U. S. 293, 8 Sup. Ct. 1370.    In Hassall v. Wilcox, 130 U. S. 493, 9 Sup. Ct. 590, there is nothing which conflicts with these views.    In that case the intervener claimed a lien prior to the mortgage under a statute of Texas, creating a mechanic's lien, and giving it priority.    The statute was of force when the mortgage was executed.    The proceedings for establishment of the lien were instituted long after that date.    The supreme court of the United States held that the trustees of the mortgage had the right to come into the circuit court of the United States, and contest the priority of the lien, and, as the claim originated after the mortgage was made, to compel the intervener to prove affirmatively in that court the existence and priority of his lien under the statute of Texas. He failed to do so.    On the contrary, the record showed that under the law of Texas he had no lien.    The judgment was attacked because obtained by fraud and collusion upon a note without consideration, and in a suit brought after the time permitted in the statute.    In the case at bar the purchasers, exercising the right of trustees of the mortgage, have come into this court, and have challenged the lien of the judgment, and, in reply to the challenge, have had exhibited to them a judgment against the common debtor for personal injuries, obtained in a suit brought within 12 months after cause of action arose, without shadow of fraud or collusion.    The conditions of the South Carolina statute are thus fulfilled.

It is objected that the special master contented himself with the production of the judgment roll, and that he erred in not requiring evidence as to the facts of the case.    But the law of South Carolina gave the preferred lien to the judgment.    The existence of the cause of action would not have availed, unless it were reduced to judgment in an action brought within 12 months after it originated.

It is urged that the master has given priority to a judgment entered long after the record of the mortgage, obtained upon a cause of action originating several years after the mortgage had been executed, and had become a recorded lien.    This is so, but it is not an anomaly in the law.    In Provident Sav. Inst. v. Jersey City, 113 U. S., at page 514, 5 Sup. Ct. 612, Justice Bradley discusses a law of New Jersey which gave priority to water rates over recorded liens on realty.    Passing by the question whether these rates were a tax or an assessment for benefits, he treats the rents imposed for water actually used as valid, on the ground of an implied con-

tract to pay them. The question was as to the constitutionality of the statute, passed in 1852, giving such rents, due under such a contract, priority over all mortgages. The mortgages were made in 1863 and 1869. The water rents were due in 1871. The case came up on foreclosure of the mortgages. The learned justice says:

"What may be the effect of these statutes in this regard upon mortgages which were created prior to the statute of 1852 it is unnecessary at present to inquire. The mortgages of complainant were not created prior to that statute, but long subsequent thereto. When the complainant took the mortgages, it knew what the law was; it knew that by the law, if the mortgaged lot should be supplied with Passaic water by the city authorities, the rent of that water, as regulated and exacted by them, would be a first lien on the lot. It chose to take its mortgages subject to the law. It is idle to contend that a postponement of its lien to the water rents, whether after accruing or not, is a deprivation of its property without due process of law. Its own voluntary act—its own consent—is an element in the transaction."

So, in the admiralty jurisdiction, in which the most exact justice prevails, the recorded lien of a mortgage of a vessel is postponed to a claim for damages in a collision occurring months after the execution and record of the mortgage.

The learned counsel also urges that, when this suit and judgment were being prosecuted, the property was in the hands of a receiver of this court. This is an error. The Richmond & Danville Railroad company was in the hands of a receiver. But no receiver was appointed for the Charlotte, Columbia & Augusta Railroad Company until 28th July, 1893, after the judgment was had. This opinion has already exceeded reasonable limits.

It is ordered that these exceptions be overruled, and the report of the special master be confirmed. Let a decretal order be prepared accordingly.