### SOUTHERN RY. CO. v. BOUKNIGHT.

(Circuit Court of Appeals, Fourth Circuit. November 7, 1895.)

#### No. 121.

**1. RAILROADS—PRIORITY OF LIENS—MORTGAGES AND JUDGMENTS—SOUTH CAROLINA STATUTE.**

A statute of South Carolina (Gen. St. 1882, § 1528), enacted in 1882, provides that whenever a cause of action shall arise against a railroad company for personal injury, and be prosecuted to judgment, such judgment shall relate back to the date when the cause of action arose, and be a lien as of that date, of equal force with the lien of employés for wages, and superior to the lien of any mortgage securing bonds, provided the action is brought within a year from the occurrence of the injury. The C. & S. R. Co., a corporation of South Carolina and North Carolina, and the C. & A. R. Co., a corporation of South Carolina and Georgia, were consolidated in 1869 into the C. R. Co., under acts of the legislatures of North and South Carolina and Georgia, and operated a line of railroad extending from a point in North Carolina, across South Carolina, into Georgia. In 1883 the C. R. Co. made a mortgage on its whole road to secure an issue of bonds. In 1886 the C. R. Co. leased its line to the R. & D. Co., which operated it until 1892, when the R. & D. Co. passed into the hands of a receiver. In 1893 a suit for foreclosure of the mortgage on the line of the C. R. Co. was brought, and the road subsequently sold, as a unit, under a decree which provided that the purchaser should pay such claims against the road as should be adjudged to be superior in lien to the mortgage. The road was purchased by the S. Ry. Co. One B. filed a claim against the purchaser, alleging that in 1891 he was injured by the negligence of the R. & D. Co. in operating the C. road, at Augusta, Ga.; that he sued the C. R. Co., within a year, in South Carolina, and recovered a judgment, which was affirmed by the supreme court of South Carolina; and claimed priority to the C. R. Co. mortgage. *Held,* that the statute, having been in force when the mortgage on the C. R. Co. was given, entered into the contract, and was binding on the mortgagee and purchaser.

**2. SAME.**

*Held,* further, that the provision that the lien of such a judgment should relate back to the date of the injury was intended only to fix priorities between conflicting liens, and did not operate on the preference over mortgages specifically created as to such judgments by the same statute.

**3. SAME—REVIVAL OF PRIOR LIENS.**

*Held,* further, that the fact that part of the proceeds of the mortgage bonds had been used to pay off bonds secured by mortgages on the C. & S. and C. & A. R. Cos., made before the statute of 1882, did not entitle the purchaser of the C. R. Co. to escape the preference of B.'s judgment over the mortgage of 1883, under foreclosure of which it bought the road.

**4. SAME—EVIDENCE—JUDGMENT ROLL.**

*Held,* further, that the judgment roll in B.'s action was admissible in evidence, before the master to whom B.'s claim was referred, as proof of

when his action was brought, what for, and the amount of damages, and was at least prima facie evidence of these facts, as against the mortgagee and the purchaser of the C. R. Co., though the mortgagee was not, as it could not have been, a party to B.'s action.

5. SAME—LIABILITY OF LESSOR COMPANY.

*Held*, further, that, even if the court could go behind the decision of the South Carolina courts as to B.'s right to recover for his injuries against the C. R. Co. instead of the R. & D. Co., the decision that he could so recover was right, since it appeared that the R. & D. Co. was operating the road wholly in the interest of the C. Co., and occupied the position towards it of an operating agent.

6. CORPORATIONS—CONSOLIDATION—EFFECT.

*Held*, further, that, as the judgment was rendered in South Carolina against the consolidated corporation, as a whole, upon a cause of action which, though arising in Georgia, was cognizable in the South Carolina courts, such corporation not being regarded, with respect to its acts and liabilities in operating its road, as a separate corporation of each of the states under the laws of which it was organized, but as one corporation, neither the mortgagee nor the purchaser could complain in the circuit court on the ground of error in such adjudication of liability.

Appeal from the Circuit Court of the United States for the District of South Carolina.

The Charlotte & South Carolina Railroad Company was incorporated by the states of North Carolina and South Carolina, and the Columbia & Augusta Railroad Company by the states of South Carolina and Georgia. These companies were consolidated under the name of the Charlotte, Columbia & Augusta Railroad Company, in accordance with an act of the general assembly of South Carolina approved March 19, 1869, which provided: "That the Charlotte and South Carolina Railroad Company and the Columbia and Augusta Railroad Company shall, upon the consent of the stockholders of each company, be consolidated, and form one and the same body corporate, under the name of the Charlotte, Columbia and Augusta Railroad Company, possessing all the rights, powers, privileges, immunities and franchises conferred upon said companies by the several acts heretofore passed and now of force, incorporating said companies, and amending the charters thereof," and that "the affairs of the said consolidated company shall be managed and directed by a general board, to consist of eighteen directors, to be elected by the stockholders from among their number: provided, that four of the directors shall be elected from amongst the stockholders residing in the state of North Carolina, and four amongst the stockholders residing in the state of Georgia." Laws S. C. 1868–69, p. 232. And an act of the legislature of Georgia, approved February 20, 1869 (Laws 1869, p. 154), and of the legislature of North Carolina, approved April 12, 1869 (Pub. Laws N. C. 1868–69, p. 598), to the same effect.

The consolidated company owned a road extending from Charlotte, N. C., to Augusta, Ga., which passed across the state of South Carolina, in which by far the largest part of the track was situated. On July 1, 1883, this company executed to the Central Trust Company of New York a mortgage upon the whole road, together with equipment, appurtenances, and franchises, to secure its coupon bonds, which were issued and negotiated to the amount of $500,000. The mortgage recited that its execution was authorized at a meeting of the board of directors of the company, held at the city of Columbia, S. C., June 1, 1883, and ratified by the stockholders of that company at a meeting held in said city on July 26th of that year. In 1886 the company leased all its franchises and property, including the whole line of railroad from Augusta to Charlotte, to the Richmond & Danville Railroad Company; and thenceforward all the rolling stock of the road was owned, and all its operations were controlled and managed, by the latter company, whose agents, without interference on the part of the lessor, were in charge of all of the business of the road. The Richmond & Danville Railroad Company and all its property and leased lines went into the hands of a receiver in

June, 1892. The interest falling due July 1, 1893, on the bonds secured by the consolidated company's mortgage, was not paid; whereupon the trustee in the mortgage, the Central Trust Company, filed its bill to foreclose July 31, 1893, and receivers were appointed under order dated July 28, 1893. April 7, 1894, a final decree of foreclosure was entered, ordering the sale of the road. This decree provided: "The purchaser or purchasers at said sale shall, as part of the consideration for such sale, take the property purchased upon the express condition that he or they, or his or their assigns, approved by the court, will pay off and satisfy any and all outstanding and unpaid receivers' obligations having priority over the lien of the mortgage hereby foreclosed, and all other claims filed in this cause, but only when the court shall allow such claims, and adjudge the same to be prior in lien to the mortgage foreclosed in this suit, and in accordance with the order or orders of the court allowing such claims and adjudging with respect thereto; and the purchaser or purchasers or their approved assigns shall be entitled to appeal from any and all orders or decrees of the court in respect to such claims or any of them, and shall have all the rights in respect to such appeals which the complainant, Central Trust Company of New York, would have in case such appeals had been taken by it. The purchaser or purchasers at said sale shall also, as part of the consideration, in addition to the payment of the sum or sums bid, take the property purchased upon the express condition that he or they, or his or their assigns, approved by the court, will pay off and satisfy all debts or obligations incurred or to be incurred by the receivers having possession of such property, which have not been or shall not be paid by said receivers or out of the proceeds of the sale or sales herein ordered or otherwise, and which shall be adjudged by the court to be debts or obligations properly chargeable against the property purchased, and to be prior or superior to the lien of the mortgage foreclosed in this suit. The court reserves the right to retake and resell said property in case of the failure or neglect of the purchaser or purchasers, or his or their assigns, approved by the court as aforesaid, to comply with any order of the court in respect to payment of prior lien claims above mentioned within twenty days after service of a copy of such order upon said purchaser or purchasers, or his or their assigns." • And also that the fund arising from the sale should be applied, among other things, "to the payment of all outstanding and unpaid debts and obligations of the receivers incurred since their appointment in and about the actual operation of the railroad, and all such claims as are decreed by the court to be prior in lien or equity to the lien of the mortgage foreclosed in this suit."

The road and franchises were thereupon sold, July 10, 1894, to the Southern Railway Company, and the sale confirmed, and conveyance executed. The order of confirmation contained this clause: "And the court further reserves full power from time to time to enter orders binding upon the said Southern Railway Company, as such purchaser, under its decree, requiring it to pay into the registry of this court all such sums as have been or may be ordered by this court, for the payment of any and all receiver's debt or claims adjudged or to be adjudged by it as prior in lien or equity to the mortgage foreclosed in this cause, or entitled to preference in payment out of the proceeds of sale prior to such mortgage bonds." On the same July 10th, Joseph Bouknight filed a petition of intervention in the cause, alleging that on November 24, 1891, he was injured by the negligence of the employés of the Danville Company, then operating the Charlotte road as lessee; that he sued the Charlotte Company therefor within 12 months thereafter in the circuit court of common pleas of Edgefield county, S. C., and recovered judgment in March, 1893, for $10,000, which judgment was affirmed by the supreme court of the state (19 S. E. 915); that this judgment was superior to the lien of the mortgage of July 1, 1883, and was entitled to priority of payment out of the proceeds of sale or by the purchasers at such sale; and praying for relief accordingly.

The petition was referred to a special master, before whom the judgment roll was exhibited, from which it appeared that petitioner claimed that on November 24, 1891, he purchased from the Danville Company, at Trenton, S. C., a station on the Charlotte Company's road, a ticket from Trenton

to Augusta and return, and on this ticket proceeded to Augusta, Ga., and that on his return, before the train had gone out of the Augusta station, he was injured in his person by the negligence of the agents of the Danville Company; that he brought his action against the Charlotte Company within 12 months thereafter, and subsequently, on issues joined, obtained a verdict and judgment, which judgment was affirmed by the supreme court of South Carolina. The master reported in favor of the priority of the judgment over the mortgage, and the Southern Railway Company filed exceptions, which were overruled, and a final decree entered January 9, 1895, awarding priority and ordering payment by the Southern Railway Company, as purchaser, of the intervener's judgment, with interest and costs, from which decree this appeal was prosecuted. The opinion of the circuit court (Simonton, J.) is reported in 65 Fed. 257.

Henry B. Tompkins (Henry Crawford, on the brief), for appellant. John C. Sheppard and E. F. Verdery, for appellee.

Before FULLER. Circuit Justice, GOFF, Circuit Judge, and HUGHES, District Judge.

FULLER, Circuit Justice (after stating the facts). The main track of the Charlotte, Columbia & Augusta Railroad Company, extending from the city of Augusta, in the state of Georgia, to the city of Charlotte, in the state of North Carolina, its other tracks, its bridges, depots, workshops, and other buildings, its rolling stock, equipment, and right of way, and its corporate rights and franchises, were sold to the Southern Railway Company as a unit, under a decree which provided that the purchaser at said sale should, as part of the consideration for the sale, pay off and satisfy all claims held and adjudged by the court to be prior in lien to the mortgage foreclosed in the suit; and the order of confirmation reserved full power from time to time to enter orders binding the Southern Railway Company as purchaser under the decree, requiring it to pay into the registry of the court such sums as might be necessary for the payment of such claims.

Section 1528 of the General Statutes of South Carolina of 1882 (being section 117 of an act approved February 9, 1882) is as follows:

"Whenever a cause of action shall arise against any railroad corporation, for personal injury, or injury to property, sustained by any person or persons, and such cause of action shall be prosecuted to judgment by person or persons injured, or his or their legal representatives, such judgment shall relate back to the date when the cause of action arose, and shall be a lien as of that date, of equal force and effect with the lien of employees for wages, upon the income, property and franchises of said corporation, enforcible in any court of competent jurisdiction, by attachment or levy and sale under execution, and shall take precedence and priority of payment of any mortgage, deed of trust, or other security given to secure the payments of bonds made by said railroad company: provided, any action brought under this section shall be commenced within twelve months from the time that said injury shall have been sustained."

Section 1416 declared the provisions of the general law regarding railroad corporations to be amendments of the charters of all railroad corporations created in the state. The date of the mortgage was July 1, 1883. Bouknight was injured November 24, 1891, and commenced his action in the circuit court of common pleas for Edgefield county, S. C., September 30, 1892.

The circuit court was of opinion that all contracts are made with reference to the law of the state in which the subject-matter of the contract is, and in which the contract is made. This certainly is true with regard to mortgages by a railroad corporation. The law enters into and becomes a part of the contract, as if it were there in express terms. Brine v. Insurance Co., 96 U. S. 634; Insurance Co. v. Cushman, 108 U. S. 51, 2 Sup. Ct. 236; Provident Inst. for Savings v. Jersey City, 113 U. S. 506, 5 Sup. Ct. 612; Railroad Co. v. Hamilton, 134 U. S. 301, 10 Sup. Ct. 546. In this particular case the section which is under consideration is a part of the general law regulating railroad corporations. The provisions of the chapter are declared to be amendments of the charters of all railroad corporations theretofore created in this state. Section 1416. This section restricts the power of railroad corporations to execute mortgages of the franchises and property, to the extent that they cannot create a lien superior to that of judgments obtained against them for personal injuries incurred in the exercise of their franchises. And the court, considering that the mortgage of July 1, 1883, was subject to the law of 1882, further held that as that law provided that judgments for personal injuries recovered in actions commenced within 12 months from the time the injury was sustained should take precedence of any mortgage, deed of trust, or other security given to secure the payment of bonds made by railroad companies, and as this provision entered into the mortgage contract, and in accepting the mortgage the mortgagee gave his assent thereto, Bouknight was entitled to priority of payment.

These views are in accordance with those expressed by the supreme court, and regarded as obnoxious to no constitutional objection.

In Provident Inst. for Savings v. Jersey City, 113 U. S. 506, 5 Sup. Ct. 612, the supreme court ruled that an act making water rents a charge upon land in a municipality prior to the lien of all incumbrances, gave the water rents priority over mortgages on such land made after the passage of the act, whether the water was introduced on the lot mortgaged before or after the giving of the mortgage, and that such act did no violation to that portion of the fourteenth amendment to the constitution which declares that no state shall deprive any person of property without due process of law. And Mr. Justice Bradley, delivering the opinion of the court, said: ι

"What may be the effect of those statutes, in this regard, upon mortgages which were created prior to the statute of 1852, it is unnecessary at present to inquire. The mortgages of the complainant were not created prior to that statute, but long subsequent thereto. When the complainant took its mortgages, it knew what the law was. It knew that, by the law, if the mortgaged lots should be supplied with Passaic water by the city authorities, the rent of that water, as regulated and exacted by them, would be a first lien on the lots. It chose to take these mortgages subject to this law; and it is idle to contend that a postponement of its lien to that of the water rents, whether after accruing or not, is a deprivation of its property without due process of law. Its own voluntary act—its own consent—is an element in the transaction."

In Railway Co. v. Frazier, 139 U. S. 288, 11 Sup. Ct. 517, a law of Tennessee, enacted in 1877, provided that no railroad company should

have power to give any mortgage or other kind of lien on its property which should be valid and binding against judgments for damages done to persons and property in the operation of the road. A mortgage was given by the company in 1881, and certain judgments were recovered subsequent to that time; and, there having been a foreclosure and sale in a state court, the judgment creditors filed petitions for the satisfaction of their judgments. Relief was accorded, and the decrees sustained by the supreme court of Tennessee. 12 S. W. 537. On writ of error the judgment of that court was affirmed by the supreme court of the United States, which said:

"The law in force at the time the mortgage is executed, with all the conditions and limitations it imposes, is the law which determines the force and effect of the mortgage. That law in this case was the law of 1877, which subordinated the mortgage to the lien of subsequent judgments for claims of the nature of those held by appellees."

Conceding the general doctrine, appellant, nevertheless, insists that priority should not have been awarded, because by the statute the lien of the judgment related only to the date of the injury, which was long subsequent to the mortgage, and because the priority operated on property and mortgages in Georgia and North Carolina, and also on mortgages in South Carolina, given before the passage of the act; that, as the mortgagee was not a party to the action against the railroad company, the judgment therein was res inter alios acta, and did not in itself establish the existence of the conditions necessary to obtain priority; that the recovery against the Charlotte Company was not justified, because the Danville Company was the intervener's carrier at the time of the injury; that the cause of action accrued in Georgia, and, if the Charlotte Company was liable at all, the liability was that of the Georgia corporation of that name, and not of the South Carolina corporation, and that the statute applied only to corporations of South Carolina and judgments recovered on causes of action arising in that state.

1. In order to settle priority between conflicting liens, the statute declared that the judgments referred to should be a lien as of the date when the cause of action arose; but this had no relation to the precedence over railroad mortgages specifically provided for in respect of such judgments, and in contemplation of the parties in entering into the mortgage contract. That priority was stipulated for by the consolidated company, whose entire property was mortgaged, and sold as a unit at the instance of the mortgagee; and the decree and the order of confirmation of the sale required the payment out of the fund produced by the sale, or paid into the registry by the purchaser, of all claims which might be adjudged to be entitled to precedence. The consolidated company had been clothed with the powers and franchises of the original companies, and was in reality, for the purposes of acting, contracting, suing, and being sued, but a single corporation, formed to carry on business in a corporate capacity in three different states. Under these circumstances, it does not lie in the mouth of the purchaser to object because the proceeds of sale might be enhanced by reason of property situated in other states than that of the forum.

Nor are we impressed with the suggestion that priority awarded against the consolidated mortgage was equivalent to priority over mortgages executed prior to 1882. It is true that the bill to foreclose avers that the proceeds of part of the bonds issued under the consolidated mortgage were used to take up and cancel bonds to the amount of some $195,500, secured by outstanding mortgages of the Columbia & Augusta and Charlotte & South Carolina Railroad Companies, but we do not perceive that the purchaser occupied a position entitling it to assert an equity for the revival of indebtedness canceled by means of the consolidated mortgage of 1883, so as to destroy the precedence existing in respect of that instrument, or to claim a proportionate reduction by reason thereof.

2. The judgment roll showed the date of suit brought, the cause of action, and when it arose, and the amount of the damages. The mortgagee was not, and could not have been, made a party to that action at law; nor is this intervention a proceeding against the mortgagee to recover over in personam. To what extent third parties may go in impeaching judgments collaterally need not be discussed. There is no pretense here of want of jurisdiction, or of fraud, collusion, or gross neglect in obtaining the judgment, or of any irregularity invalidating it. The only way in which the judgment was questioned was by exceptions to the master's report, which raised objections to its admission in evidence, to its sufficiency as proof of the allegations of the petition, to the award of priority, and that the master errer in not reporting that Bouknight, on the face of his petition, was guilty of contributory negligence, and not entitled to recover. The date of the mortgage appearing, the judgment record was sufficient to make out petitioner's case, if admissible in evidence; and we are clear that it was admissible under the statute, not simply as establishing the fact of its rendition, but as proof of when the action was brought, what for, and the amount. Being conclusive as to each of these matters as between the parties, it was certainly not less than prima facie against the mortgagee in respect of them, and that is enough to dispose of the inquiry here.

In Hassall v. Wilcox, 130 U. S. 493, 9 Sup. Ct. 590, the judgment in controversy was rendered on a complaint, counting on a note, the consideration of which appeared on its face to be in part for services which were not, and in part for labor claims which were, entitled to preference under the statute of Texas involved in the case; and, this being so, it was held by the supreme court that the bondholders had the right to compel the plaintiff to prove affirmatively the amount for which he was entitled to a lien. The case is peculiar, and does not rule the point before us.

3. In Bouknight v. Railroad Co., 41 S. C. 415, 19 S. E. 915 (being the case in which this judgment was affirmed), the liability of the Charlotte Company was contested, on the ground that the company had previously leased its property, franchises, etc., to the Danville Company, which latter company, if any, it was claimed, was liable. But the contention was overruled by the supreme court of South Carolina, which remarked:

"After the repeated decisions of this court upon this subject, we can hardly think that it is necessary for us to go again into the argument."

National Bank of Chester v. Atlanta & C. A. L. Ry. Co., 25 S. C. 216, and Harmon v. Railroad Co., 28 S. C. 405, 5 S. E. 835, were cited, in which the supreme court of South Carolina held that:

"When a railroad or other corporation receives its charter from the state, conferring certain franchises, rights, and privileges, it is upon the consideration that such corporation shall perform the duties and fulfill the obligations which it at the time incurs. The fact that the corporation chooses to perform those duties and fulfill its obligations to the community through another, whether as lessee or otherwise, cannot release it from the obligation which it has assumed by the acceptance of its charter."

And the court was of opinion that there was no ground for a distinction between the liability of a railroad company which had leased its line to another in actions ex delicto and actions ex contractu, nor for the distinction, often laid down in judicial decisions, between the liability of the lessor for an injury sustained by reason of some omission of duty resting upon it—as, for example, from the defective condition of its track or of a bridge existing at the time of the lease—and an injury arising from the mere negligence of the lessee's servants in running the trains.

In Singleton v. Railroad Co., 70 Ga. 471, the same doctrine is announced, although there the railroad was operated by the lessee in the name of the lessor.

But if we could go behind the judgment, and were at liberty to disregard the settled rules in South Carolina and Georgia, still we should not reverse the order appealed from on this ground. The lease, which we assume must have been part of the record below, and which is referred to by the circuit court, disclosed that the Danville Company was conducting the road wholly in the interest of the Charlotte Company, its covenants providing that the receipts, income, and revenues derived from the use and operation of the lines should be applied to operating expenses, cost of new rolling stock, improvements, payment of all claims or charges growing out of the use of the property prior to the lease, insurance, and taxes, the payment of the necessary expenses (not exceeding $1,500) to keep up the corporate organization of the Charlotte Company, the payment of interest on certain enumerated bonds; and that "any and all residue of said receipts, income, and revenues remaining after each and every of the above mentioned and specified payments have been made shall be paid over to the said party of the first part [the lessor], and be by it applied to the payment of dividends upon its capital stock, as its board of directors may direct." As held by the circuit court, the Danville Company occupied the position of operating agent, and the decisions of the supreme court in Railroad Co. v. Brown, 17 Wall. 445, 450, and Railroad Co. v. Jones, 155 U. S. 333, 350, 15 Sup. Ct. 136, are in point and are decisive.

4. The cause of action upon which judgment was rendered arose in Georgia, and it is insisted that it so arose against the Charlotte Company, if at all, as a corporation of Georgia, and that the statute did not apply to causes of action arising in, or against a corporation of, any other state than South Carolina. As the judgment must be a judgment recovered in South Carolina, so it is said the words

"whenever a cause of action shall arise against any railroad corporation for personal injury" must be held to mean arising in South Carolina, and that this construction is strengthened by the reference of the lien of the judgment to the date of the accruing of the cause of action; furthermore, that section 1528 is one of many sections prescribing regulations for the prevention of accidents and concerning responsibilities therefor, all of which constitute a purely local statute, and, like all other legislation of the kind, could have no application to accidents or injuries save only those occurring within the state. And it is also urged that, so far as the mortgagee is concerned, the statute was not a mere regulation of the remedy, but created a new liability, conditioned on the action being "brought under this section" within 12 months of the injury, and that such liability could not exist in respect of causes of action arising elsewhere. But the action was transitory, and brought as for a tort at common law, which, it would be presumed, prevailed where the injury occurred, as it did where suit was brought. And that this was so in fact is not denied. Even if the cause of action had been a Georgia statutory delict, it would have been justiciable in South Carolina, since it was not inconsistent with the statutes or public policy thereof. Dennick v. Railroad Co., 103 U. S. 11; Railway Co. v. Cox, 145 U. S. 593, 12 Sup. Ct. 905; Railroad Co. v. Babcock, 154 U. S. 190, 14 Sup. Ct. 978. And see Railroad Co. v. Wyler, 158 U. S. 285, 15 Sup. Ct. 877.

The objection really is that recovery should have been denied by the state court, because the injury was not inflicted by the South Carolina corporation, but by the Georgia corporation, while it was the South Carolina corporation only that was sued. Granting that, when a consolidated corporation is created by the legislation of three states, each state retains its control over its own charters, and the company exercises its powers in each state by virtue thereof, yet it does not follow that the consolidated corporation may not be held responsible for the acts and neglects of its constituent members as done by it as a whole. Petitioner was a citizen of South Carolina, who suffered injury through negligence when on carriage from South Carolina to Georgia, and back; and the courts of South Carolina have adjudged his right of recovery against the consolidated company. The mortgage was executed by that company, as a single corporation, in South Carolina, and authorized and ratified in that state, under powers of consolidation derived from the legislation of three states. The mortgage was foreclosed in South Carolina, and the property sold there as a unit; and neither the mortgagee, nor the purchaser under it, can rid itself of the adjudication of liability on the theory that the mortgagor was not in fact and in law a single corporation, but three corporations, or claim that no judgment could come within the statute, although recovered against the consolidated company, if for a personal injury incurred in another state than that of the forum, on the ground that it was inflicted in the exercise of the franchises of a separate domestic corporation of such other state. In short, as the judgment was rendered on a cause of action cognizable in South Carolina, and as the language of the statute is

general, we perceive no adequate ground for the exception contended for, notwithstanding the ingenuity of the argument, in the way of construction, in its support.

The statute did not create a new legal liability, as in The Harrisburg. 119 U. S. 199, 7 Sup. Ct. 140, cited for appellant, but made provision for priority in respect of judgments for personal injury in actions brought in view of the statute within 12 months; and that priority, which was the legal consequence of the recovery in actions so brought, must be held to have been in contemplation of the parties when the mortgage was made. If the property of the company had not been in the custody of the law, then this judgment would have been enforceable by attachment or by levy and sale under execution; and the intervening petition was nothing more than a different mode of collection, rendered necessary by the circumstances.

The circuit court was right, and its decree is affirmed.