## SOUTHERN RY. CO. v. TILLETT.

(Circuit Court of Appeals, Fourth Circuit.   November 10, 1896.)

No. 171.

RAILROAD COMPANIES—RECEIVERS—SURPLUS EARNINGS—PRIORITY OF CLAIMS.
  Receivers operating a railroad system are bound to pay out of the surplus earnings all claims contracted within a reasonable time before the receivership, for necessary repairs of a road held as part of the system, under a lease whereby payment of the interest on all outstanding bonds of such road is guarantied; and the payment of such interest, and making permanent improvements out of surplus earnings, to the exclusion of such claims for repairs, give to the latter a superior equity to the mortgage debts.

Appeal from the Circuit Court of the United States for the Eastern District of Virginia.

This was a bill for foreclosure of a mortgage by the Central Trust Company against the Richmond & Danville Railroad Company. John R. Tillett intervened, proved his claim, and, after the purchase of the property, filed his petition, praying payment as against the purchaser. From a decree in favor of the intervener, this appeal was taken.

Willis B. Smith and Henry Crawford, for appellant.

R. Carter Scott, for appellee.

Before SIMONTON, Circuit Judge, and HUGHES and MORRIS, District Judges.

SIMONTON, Circuit Judge.   This case comes up on appeal from a decree of the circuit court of the United States for the Eastern district of Virginia.

The question in the case is between the intervener, John R. Tillett, intervening in the main cause, and the purchaser at the sale for foreclosure of the Richmond & Danville Railroad.   The claim of the intervener is for the building of a culvert and repairing a washout on the Virginia Midland Railroad, October 16, 1891.   The Virginia Midland Railroad was a part of the Richmond & Danville System, held under a lease for 99 years to the Richmond & Danville Railroad Company.   By the terms of this lease, the Virginia Midland was to be operated by the lessee road, and all of its earnings received by the lessee.   The whole of the earnings, after payment of operation expenses, including repairs and maintenance, were to be applied to the payment of interest on certain existing bonds, secured by mortgages of the Virginia Midland Railroad in existence at the date of the lease, according to their legal priorities.   These bonds are specified in detail in said lease concluding with the following provision:

"(6) Any and all residue of said receipts, income, and revenue remaining after each and every of the above-mentioned and specified payments have been made shall be paid over to the said party of the first part."

This leasehold interest in this lease is included among the property mortgaged to the complainants in the main cause, and has been sold by the decree of the court, and has been purchased by the purchasers. Interest was paid on the bonds of the Virginia Midland Railroad Company.   On 15th June, 1892, Clyde and others, stockholders and cred-

itors, filed their bill against the Richmond & Danville Railroad Company, and on that day Reuben Foster and F. W. Huidekoper were appointed receivers. In the order appointing them was a provision instructing them "to pay and discharge all the current and unpaid pay rolls and vouchers and supply accounts incurred in the operations of the said railroad system at any time within six months prior hereto." On 16th August, 1892, special masters were appointed, who, among other things, were directed to call in all creditors of the system to come in and prove their claims before them on or before a day certain. The receivers thus appointed entered upon their duties, and operated the system, receiving large earnings therefrom, which were applied to operating expenses, debts, improvements of a permanent character, and interest on mortgage bonds. On 17th July, 1893, the Central Trust Company, a mortgage creditor, filed its bill for foreclosure of its mortgage on the whole system of the Richmond & Danville; whereupon Reuben Foster, F. W. Huidekoper, and Samuel Spencer were appointed receivers. Foster and Huidekoper, the receivers under the Clyde bill, thereupon accounted as such receivers, and were discharged. In the order appointing receivers in the case of the Central Trust Company is this provision:

"Nothing in this order contained shall be construed to vacate any of the orders heretofore entered in the case of William P. Clyde and others; but the court reserves full power to act upon the master's reports filed in the said cause, and in said cause to adjudge and decree upon the rights of creditors ascertaining a claim against the property of the said railroad company or income thereof, in preference to the mortgage debt thereof by orders to be entered in the said suit of William P. Clyde and others, upon notice to parties, with like effect upon the mortgaged property and income as if such orders were entered in this cause."

The intervener proved his claim before the special masters in the first case, and subsequently, and after the purchase of the property, filed his petition, praying payment as against the purchaser. The petition was answered, and the matter referred to the special masters, who reported as follows:

"It appears from the records of the Richmond and Danville Company that during the year in which this debt was contracted, to wit, from July 1, 1891, to June 16, 1892, there was paid to the bondholders of the Virginia Midland Railway Company about $664,000, and, during the same time, to the bondholders of the Richmond & Danville Railroad Company the sum of $790,000. Upon these facts, the special masters are of opinion that the payment of $664,000 to the bondholders of the Virginia Midland Railway Company was such a diversion of the revenue derived from that railroad which, under the first provision of its lease to the Richmond & Danville Company, should have gone to the payment of this claim, as to entitle the claimant to an equity superior to that of the bondholders under the mortgage by the provisions of which the road was sold. In accordance with the provisions of the decree of sale in this cause, the claim should be paid by the purchaser, the Southern Railway Company."

Exceptions were taken to the report, on the hearing of which the circuit court overruled the exceptions, and ordered a decree to be entered against the purchasers in favor of the petitioner in the sum of $836.14 and interest thereon from 16th October, 1891. The case comes here on assignment of errors from this decree.

The order of sale in the main cause provided that the purchaser thereat should take the property, and pay in addition to his bid, among other things, "all other claims heretofore filed in this case, or in either of the cases consolidated herein, but only when said court shall allow such claims, and adjudge the same to be prior in lien or superior in equity to the mortgage foreclosed in this suit." The purchaser thus stands in the shoes of the creditors whose mortgage is foreclosed in these proceedings, and has no other liability, is subject to no other lien, and is bound by no other equity, than such as the creditors under that mortgage would be subjected to. The principle established in Fosdick v. Schall, 99 U. S. 235, and the cases following it, is that current operating expenses, and all other outlays necessary to keep a railroad a going concern, must be paid in full out of the current earnings, before creditors holding a mortgage on the road can be paid. "And, if current earnings are used for the benefit of the mortgage creditors before such current expenses are paid, the mortgage security is chargeable in equity with the restoration of the fund which has thus improperly been applied to their use."

The claim before the court arises from necessary repairs done on the line of the Virginia Midland Railway, held under a long lease by the Richmond & Danville System. This lease is included in the mortgage foreclosed in the main cause. It has been purchased by, and has been conveyed to, the appellant, the order of sale providing that "the purchaser or purchasers at said sale shall not be required to assume or adopt any of the leases described or referred to in said consolidated mortgage, but shall have the right to elect whether or not to assume or adopt the same or any thereof." It goes without saying that this lease was of great advantage to the whole system. An important part of its through line, its only connection with Washington, it contributed immensely to the passenger and freight traffic on all the other parts of the system. Upon examining the lease, it will appear that the lessees bound themselves to pay, at all events, the interest on all outstanding bonds of the lessor, whether the earnings of the leased road, which were made specially applicable thereto, were sufficient for this purpose or not. That provision made the Virginia Midland Railway an integral part of the system, whose earnings were a part of the gross earnings of the whole system, and required that the earnings of the system should be first applied to making it and the rest of the system a going concern. When, therefore, the Richmond & Danville Railroad Company paid the interest on the bonds of the Virginia Midland, and also paid interest on its own bonds, including the bonds secured by the foreclosed mortgage, leaving unpaid this claim for necessary repairs, this was a diversion. The Richmond & Danville Railroad Company received all the earnings of the Virginia Midland. They were bound in any event to pay all the interest on the bonds of the latter. When they used these earnings to pay interest on the mortgage debt, leaving unpaid a claim for necessary repairs, they took moneys applicable to such repairs, and applied them to the discharge of their own obligation. This was a diversion which they must restore. Trust Co. v. Morrison, 125 U. S. 612, 8 Sup. Ct. 1004; Railway Co. v. Wilson, 138 U. S. 501, 11 Sup. Ct. 405.

We see no error in the conclusion reached by the circuit court, and the decree is affirmed.

MORRIS, District Judge. I dissent on the question of the allowance of interest on the claim in this case.