In re CHICAGO, R. I. & P. RY. CO.

WISE et al. v. CHICAGO, R. I. & P. RY. CO. et al.

No. 6158.

Circuit Court of Appeals, Seventh Circuit.

May 27, 1937.

Louis L. Dent, John P. Hampton, and George M. Weichelt, all of Chicago, Ill., for appellants.

White & Case, of New York City, and Winston, Strawn & Shaw, of Chicago, Ill. (Jesse E. Waid, of New York City, Frank H. Towner, of Chicago, Ill., and Henry J. Brock, of New York City, of counsel), for Bankers Trust Co. and R. Gregory Page, trustees.

Root, Clark, Buckner & Ballantine, of New York City (Wilkie Bushby, of New York City, of counsel), for appellee Protective Committee for First and Refunding Mortgage 4% Gold Bonds and Secured 4½% Gold Bonds, Series A, of Chicago, R. I. & P. Ry. Co.

Before EVANS and MAJOR, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

This appeal questions the validity of an order entered in the course of proceedings

314

for reorganization of the Chicago, Rock Island & Pacific Railway Company, under section 77 of the Bankruptcy Act, as amended (11 U.S.C.A. § 205).

Appellants are two claimants, Wise and Taylor, who filed their petitions on April 10, 1936, relying upon section 77, subsec. (n) of the Bankruptcy Act, as amended August 27, 1935 (11 U.S.C.A. § 205(n) the pertinent portion of which is: " * * * claims on August 27, 1935 or thereafter payable by sureties upon supersedeas, appeal, attachment, or garnishment bonds executed by sureties, without security, for and in any action brought against such railroad corporation or trustee appointed pursuant to this section, shall be preferred against and paid out of the assets of such railroad corporation as operating expenses of such railroad."

The facts are not disputed. Appellant Wise, in no way connected with the railroad, was struck by a train on January 2, 1926; he obtained judgment for the sum of $15,000; the railroad company appealed, giving a supersedeas bond in the sum of $20,000, with surety, on February 25, 1932. The judgment was affirmed November 16, 1934, and has not been paid.

Appellant Taylor, owner of lands damaged by overflow of water caused by an embankment built by the railroad, obtained judgment in the sum of $1,000. The railroad company appealed, furnishing a supersedeas bond with surety in the sum of $2,-000 on March 13, 1931. The judgment was affirmed September 10, 1935, and has not been paid. Upon neither bond did the surety company receive security. Appellants relied upon the bonds, claiming that under subsection (n) they are entitled to priority in payment out of the income of the debtor.

The railroad debtor's petition for reorganization was filed and approved June 7, 1933. Trustees were appointed, who, when appellants filed their claims, answered, admitting the facts and praying instructions of the court as to propriety of preference of payment. The Bankers Trust Company, trustee under a trust deed securing bonds, filed an answer, as did the bondholders protective committee also. The District Court denied the petitions.

Appellants contend that to classify their claims as operating expenses, under the existing facts, is not unreasonable or arbitrary and that the court should have granted the relief prayed. Appellees insist that to extend preference to obligees in supersedeas bonds as provided by the act is to deprive the mortgagee of property without due process of law, in contravention of the Fifth Amendment, and that to allow the relief would at all events create retroactive violation of the mortgagee's rights.

The trust deed upon which appellees rely conveys, to secure bonds, all property of the railroad company and all income resulting from operation thereof, and it is insisted, therefore, that to allow these claims as operating expenses, is to impair the lien upon the income and amounts to an attempt to provide something to be an operating expense which is not in fact of that character.

The District Court on May 2, 1934, in pursuance of a petition filed by the mortgagee on March 6 preceding, entered a so-called sequestration order, perpetuating of record the assertion of a lien upon the income by the mortgagee. The order did not direct that the income be segregated and distributed to the trustee, but provided that the debtor's trustees should keep proper records showing separately the various items of revenue. The court directed that nothing in the order should be construed as determining the merits of any application of income or as requiring the trustees to pay over or ear-mark any of the same, pending the further order of the court, and that the order be without prejudice to the rights of the mortgagee *or any other party*.

The bankruptcy power is subject to the Fifth Amendment of the Constitution. Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593, 97 A.L.R. 1106; Kuehner v. Irving Trust Co. (1937) 57 S.Ct. 298, 81 L.Ed. ——. At the threshold, then, we are confronted with the contention that classification of claims such as those of appellants as operating expenses is arbitrary and unreasonable, impairs the vested rights of the appellees under the mortgage, and deprives them of their property without due process of law.

The mortgagee's vested rights may not be impaired by action of Congress. Louisville Joint Stock Land Bank v. Radford, supra. To do so is to take property without compensation. So here, the trust deeds constituted vested first liens upon the res of the railroad company's property and the income, which neither the legislative department nor the judiciary may impair without just compensation.

■■ But it has long been established that mortgages upon railroad properties are subject to certain implied conditions. Every railroad mortgagee, in accepting its security, impliedly agrees that all current debts, accruing in the ordinary course of the operation of its business, shall be paid from the current income before he has claim thereto. Fosdick v. Schall, 99 U.S. 235, 25 L.Ed. 339. The net earnings, while a railroad is in possession of the court and operated by it, are not exclusively the property of the mortgagee, but are subject to the payment of claims which have superior equities, as such shall be found to exist. Hale v. Frost, 99 U.S. 389, 25 L.Ed. 419. In other words, the court in operating a railroad must do what the company would have been bound to do if it had remained in possession, pay out of what it receives from earnings all debts which, in equity and good conscience, considering the character of the business, are chargeable against such earnings. Debts accruing in earning the income must be paid therefrom before any part thereof may be applied to the use of the mortgagee, for the business is public in character, involving the necessary transportation of persons and property, and it is essential that there be no embarrassment to the operation by any unnecessary interference with those who carry it on. Burnham v. Bowen, 111 U.S. 776, 4 S.Ct. 675, 28 L.Ed. 596. The uninterrupted continuation of the business and preservation of its operating and earning functions being inherently essential to the protection and preservation of the security of the mortgagee, it follows that the court must provide for the payment of pre-existing debts of certain classes out of the earnings and even the corpus of the property of a railroad in receivership. Miltenberger v. Logansport, etc., Ry. Co., 106 U.S. 286, 1 S.Ct. 140, 27 L.Ed. 117.

Thus the Supreme Court has approved the prepayment of claims for car springs, furnished three years before the appointment of receiver; for coal used in the company's locomotives eleven months prior to such appointment; for wages to employees of the road accruing within six months immediately preceding the appointment; for damages arising on an injunction bond given by the railroad company to restrain a judgment creditor from obtaining by execution or garnishment payment of the judgment from the current income. Union Trust Co. v. Illinois Midland R. Company, 117 U.S. 434, 6 S.Ct. 809, 29 L.Ed. 963; Union Trust Co. v. Morrison, 125 U.S. 591, 8 S.Ct. 1004, 31 L.Ed. 825; Kneeland v. American Loan Company, 136 U.S. 89, 10 S.Ct. 950, 34 L.Ed. 379. In each of these instances the court concluded that, considering the nature of a railroad, the character of its business, the necessity of preservation and uninterrupted enjoyment of its property and the resulting implied assent·of mortgagees to recognition of propriety of priorities to preserve these essentials, equity demanded that such expenses should be paid as operating expenses even though incurred prior to attachment of jurisdiction of the court.

■ The time within which such current claims must have accrued in order to constitute current expenses and be paid out of current income before the same shall be applicable to the mortgage depends upon the facts and circumstances of each particular case. But for many years, the courts have quite generally recognized that in most instances a reasonable time within which they must have accrued is six months; that such a period ordinarily is reasonable for a diligent creditor; and that usually a longer period is unnecessary. Blair v. St. Louis, H. & K. Ry. Co. (C.C.) 22 F. 471. This doctrine was approved in Southern Ry. Co. v. Carnegie Steel Co., 176 U.S. 257, 20 S.Ct. 347, 44 L.Ed. 458; Union Trust Co. v. Morrison, 125 U.S. 591, 8 S.Ct. 1004, 31 L.Ed. 825. In Lackawanna, etc., Co. v. Farmers' Loan, etc., Co., 176 U.S. 298, 20 S.Ct. 363, 44 L.Ed. 475, the court points out that the proper limit upon pre-existing current debts that may be properly charged against current receipts is to be controlled by the special facts. It is obvious from St. Louis & S. F. R. R. v. Spiller, 274 U.S. 304, 47 S.Ct. 635, 71 L.Ed. 1060, that by long-established practice the six months' limitation has become largely commercially accepted; but that there are cases in which it has not been accepted though they are few in number and exceptional in character. Consequently it is well established that the lien of the mortgage upon a railroad is subject to the implied condition that accrued current debts incurred in earning current income shall be paid from the income of the railroad company before the lien of the mortgage attaches, and that this implied condition becomes a part of every mortgage or trust deed upon railroad property upon which those who have current demands may rely.

But it is insisted that to classify claims such as those of appellants as operating expenses is arbitrary and unreasonable.

The purpose of bankruptcy administration is to produce a fair, reasonable and equitable distribution of assets. Kuehner v. Irving Trust Co., supra. The classification of claims as proper to be paid as current expenses from current income under the decisions cited is based not upon the bankruptcy act but upon the inherent rules of equity. Congress made no provision for the allowance of priority of current expenses in equity cases but the Supreme Court found that equity itself demands such classification. Congress by subsection (n) has now said that, in the interest of orderly administration and efficient uninterrupted operation, claims upon supersedeas bonds payable by sureties existing at the time of the passage of the act shall be treated as operating expenses. Obviously Congress, under its paramount jurisdiction in bankruptcy, may establish reasonable standards of provability and measures of allowance in order to work out equitable distribution of assets. Such was the ruling in Kuehner v. Irving Trust Co., supra, in which the court approved that provision of section 77B of the act (11 U.S.C.A. § 207), which limits a claimant upon a lease to such damages as he may suffer within three years, regardless of the remainder of his term. Congress may not arbitrarily classify an act as something, the attributes of which it does not partake, Heiner v. Donnan, 285 U.S. 312, 52 S.Ct. 358, 76 L.Ed. 772, but it may always designate an act as coming within a certain category if in its inherent nature it may reasonably be said to be endowed with the qualities of such category.

Let us examine the character of the claims. Though the suits are upon the supersedeas bonds, one appellant obtained a judgment for damages caused by overflow of his land by an embankment of the railroad upon which the mortgagee has its lien. Presumably such embankment was erected by the railroad company to improve the value of the mortgaged property or to facilitate the operation thereof, to the end that earnings might accrue. Appeal and supersedeas followed. Appellant was thus prevented from enforcing his judgment. The other appellant was injured by the negligence of the railroad company in the operation of its trains. He obtained judgment; an appeal was taken and supersedeas obtained, and he, too, was prevented from realization upon his judgment.

Neither of these events was extraordinary or unusual in the construction and operation of a railroad. Human care and judgment have never been able to eliminate accidents and consequent hurts to persons and property in such a hazardous business as that of operating a railroad. Injuries to the public through negligence are unfortunately far from infrequent; overflow of land because of embankments and levees occurs from time to time. In the very nature of things these risks and events attach to, emanate from, and grow out of the process of earning income. They partake of the nature of operating expenses, and therefore may be classified by Congress as such expenses, payment of which from the income before payment to the mortgagee is only equitable.

It is no answer to assert that the approval of these claims will result in wholesale allowance of unsecured claims with priority over the mortgagee's rights. Such effect does not necessarily follow and does not now confront us. The question of unreasonable and arbitrary classification is one arising upon the specific facts before us, which disclose that the debts to appellants originally were incurred in the earning of the income upon which the mortgagee claims a lien. Having been incurred in the process of earning the income, they partake of the nature of operating expenses and are not unreasonably classified as such. There is no question of rights of other creditors here.

It is insisted that to allow these claims is to enforce illegally retroactive legislation impairing appellees' liens. But it has long been established that such liens are subject to the implied condition of prior payment of current expenses and the classification of such claims as operating expenses is not unreasonable and arbitrary. Furthermore, the mortgagee's rights were at all times subject to bankruptcy legislation by Congress "affecting the creditor's remedy * * * against the debtor's assets, or the measure of the creditor's participation therein," provided only that the statutory provisions are consonant with a fair, reasonable, and equitable distribution of the assets. Kuehner v. Irving Trust Co., supra; In the Matter of the Prima Company, a corporation, 88 F.(2d) 785 (C.C.A.7).

Nor did the sequestration order alter the situation. The court expressly provided that the rights of the parties should not be prejudiced thereby.

The order of the District Court is reversed, with direction to proceed in accordance with the views herein expressed.