550

**POWELL et al. v. LINK et al.**
No. 4633.

Circuit Court of Appeals, Fourth Circuit.
Sept. 16, 1940.

W. R. C. Cocke, of Norfolk, Va., for appellants.

James H. Price, of Greenville, S. C., and Alexander W. Parker, of Richmond, Va. (Price & Poag and W. A. Bull, all of Greenville, S. C., J. Moore Mars, of Abbeville, S. C., and Richard McDearmon and Christian, Barton & Parker, all of Richmond, Va., on the brief), for appellees.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

We adopt the statement of the facts of this case contained in the brief of appellants (pp. 1–3), which reads as follows:

"This is an appeal from an order entered on February 28, 1940, by the District Court of the Eastern District of Virginia in the Seaboard Air Line Railway Receivership Proceedings allowing priority to the claims of Appellees Link and Moore. The claims are evidenced by judgments obtained by the claimants against the Railway Company prior to the receivership in suits for personal injuries received in the course of their employment. Link recovered a judgment for $15,000. in a South Carolina State Court on April 26, 1929, and Moore a judgment for $4,000. in a Georgia State Court on November 7, 1930.

"The District Court held the claims to be entitled to preference and payment out of receivership assets by reason of the amendment approved August 11, 1939, to Subsection n of Section 77 of the Bankruptcy Act, 11 U.S.C.A. § 205, sub. n which provides as follows:

" '(n) In proceedings under this section, and in equity receiverships of railroad corporations now or hereafter pending in any Court of the United States, claims for personal injuries to employees of a railroad corporation, claims of personal representatives of deceased employees of a railroad corporation, arising under State or Federal laws, and claims now or hereafter payable by sureties upon supersedeas, appeal, attachment, or garnishment bonds, executed by sureties without security, for and in any action against such railroad corporation or trustees appointed pursuant to this section, shall be preferred and paid out of the assets of such railroad corporation as operating expenses of such railroad.'

"In so holding the Court ruled that it was controlled by the recent decision of the Supreme Court of the United States in Carpenter v. Wabash Ry. Co., 309 U.S. 23, 60 S.Ct. 416, 84 L.Ed. 558, decided January 29, 1940, which upheld the amendment to Subsection (n) of Section 77 as constitutionally applying to equity receiverships.

"In holding the claims entitled to priority, however, the order appealed from directed payment not only of the principal amounts but of interest at the rates provided by the state statutes for interest on judgments from the dates of the rendition of the judgments until the date of payment when made by the Receivers."

Two questions are presented for our consideration on this appeal:

(1) Did Congress have the power, under the Fifth and Tenth Amendments to the Constitution of the United States, to make the claims of the appellees prior to existing lien obligations of the Railway Company, particularly the mortgages constituting liens upon the properties of the Railway Company and the receivers' certificates issued under previous decrees of the District Court which provided that such certificates should be secured by a paramount lien upon all the fixed properties of the Railway Company and also upon all its surplus earnings and income not used in maintenance and operation of its properties?

(2) If Question 1 be answered in the affirmative, did Judge Way err in allowing not only the principal amounts of the claims of appellees but also interest thereon, until the date of payment by the receivers, at the rates provided by the statutes of the states wherein the judgments of appellees were obtained?

The first question, we think, requires no extended discussion on our part. As did Judge Way, so do we think this question has been quite definitely decided in favor of the appellees by the United States Supreme Court in Carpenter v. Wabash Railway Co., 309 U.S. 23, 60 S.Ct. 416, 84 L.Ed. 558. This case passed on the very statute now before us; the claim there, as here, was a judgment for personal injuries received by an injured employee of the railroad. Said Chief Justice Hughes, (309 U.S. at pages 27–29, 60 S.Ct. at page 418, 84 L.Ed. 558) in the Carpenter case:

"We are of the opinion that the amended statute is applicable to this proceeding. The statute applies to 'equity receiverships of railroad corporations now * * * pending in any court of the United States'. This is such a case. The statute applies to 'claims for personal injuries to employees of a railroad corporation'. This is such a claim. The statute says that a claim of that sort 'shall be preferred and paid out of the assets of such railroad corporation as operating expenses of such railroad'. This is a direct requirement governing the action of the court in this cause.

"We have no doubt that Congress has constitutional power to impose this requirement. We have held that earnings, while a railroad is in possession of the court and operated by its receivers, 'are not necessarily and exclusively the property of the mortgagees' but are subject to the payment of claims which have superior equities as these may be found to exist. Fosdick v. Schall, 99 U.S. 235, 25 L.Ed. 339; Hale v. Frost, 99 U.S. 389, 392, 25 L.Ed. 419. Claims having such equities may be accorded priority in payment although they arose prior to the receivership. Miltenberger v. Logansport C. & S. W. Railway Co., 106 U.S. 286, 1 S.Ct. 140, 27 L.Ed. 117; Burnham v. Bowen, 111 U.S. 776, 4 S.Ct. 675, 28 L.Ed. 596; Union Trust Co. v. Illinois Midland R. Co., 117 U.S. 434, 6 S.Ct. 809, 29 L.Ed. 963. It is manifest that the reasonable classification of claims as entitled to priority because of superior equities may be the subject of determination by Congress in providing for the distribution of assets in bankruptcy proceedings. See Kuehner v. Irving Trust Co., 299 U.S. 445, 451, 452, 57 S.Ct. 298, 301, 81 L.Ed. 340. In this view, the provision of subsection (n) of Section 77 of the Bankruptcy Act [11 U.S.C.A. § 205], as it stood prior to the amendment of August 11, 1939, was sustained by the Circuit Court of Appeals of the Seventh Circuit in Wise v. Chicago, R. I. & P. R. Co. [7 Cir.] 90 F.2d 312, 113 A.L.R. 487, with respect to certain unsecured surety bonds, and by the Circuit Court of Appeals of the Eighth Circuit with respect to claims for injuries to railroad employees. Central Hanover Bank & Trust Co. v. Williams [8 Cir.] 95 F.2d 210; Thompson v. Siratt [8 Cir.] 95 F.2d 214.

"We see no ground for a different conclusion with respect to the power of Congress to enact the amendment in relation to the distribution of assets in the case of an equity receivership. And the fact that the provision as to the latter is included in a section of the bankruptcy statute does

not derogate from its controlling authority as an expression of the will of Congress. The Circuit Court of Appeals of the Eighth Circuit has recently held this provision as to equity receiverships to be applicable and valid in relation to claims for personal injuries sustained by employees of this railroad corporation. American Surety Co. v. Wabash Railway Co. [8 Cir.] 107 F.2d 685. We think the conclusion is sound."

Counsel for appellants strongly urge that, as far as the instant decision is concerned, the Carpenter decision is largely dictum. We are not impressed by that contention. In Paramino Lumber Co. v. Marshall, 309 U.S. 370, 60 S.Ct. 600, 84 L.Ed. 814, the Carpenter case was expressly approved, when Mr. Justice Reed (309 U.S. at page 379, 60 S.Ct. at page 603, 84 L.Ed. 814) said: "In Carpenter v. Wabash Railway Co., we upheld as valid and applicable an act granting priority to railroad employees for damages for personal injuries over other claimants in equity receiverships."

The opinions of the Supreme Court in the Carpenter and Paramino cases, we think, definitely control the constitutionality of the federal statute and the applicability of this statute to the claims of the appellees. Upon the strength of those two cases, then, we affirm Judge Way and answer the first question in the affirmative.

Question number two is of less importance but of greater difficulty. The statute gives preference and priority to "claims"; it is silent on the subject of interest on these claims. Nor does the opinion in the Carpenter case even mention the subject of interest. However, the report of the Carpenter case in the Circuit Court of Appeals reveals that the claim was for judgment and interest. Carpenter v. Wabash R. Co., 8 Cir., 103 F.2d 996, 998. The closing statement of the Supreme Court would thus appear to recognize the preference and priority of the interest as well as the principal sum (309 U.S. at page 30, 60 S.Ct. at page 419, 84 L.Ed. 558): "The judgment of the Circuit Court of Appeals is vacated and the cause is remanded to the District Court with directions to allow petitioner's claim in accordance with the statutory provision."

In all events, if interest be allowable here, and we think it is, it would seem (as Judge Way held) the proper rate would be that fixed by the applicable statute of the state in which the judgment of the claimant was obtained.

In his opinion in the District Court, Judge Way had this to say on the subject of interest: "As I view the Statute, Congress did not undertake to determine the amounts of such claims or the interest that was properly allowable where the claim was reduced to judgment prior to the receivership, but merely took such claims out of the general, unsecured class and elevated them to a class entitled to priority of payment out of the assets of the railroad. That, it seems to me, is the substance of the Act. I do not find in the Act anything that authorizes the Court to say that it will recognize so much of the claim and refuse to recognize the balance, or that it will recognize the principal but not the interest thereon, where the claim comes within the class covered by the Act of Congress, but prior to the receivership was merged in a judgment of a court of competent jurisdiction. It is the duty of the Court to recognize such claim in its entirety when it was prior to the receivership reduced to a valid, binding judgment. Although this point does not appear to have been raised and considered in the Carpenter case, or in any of the other decisions under the Act, I think it must have been taken for granted that when a claim comes within the class specified in the Act of Congress, the principal and interest must be paid in full, if the claim was reduced to judgment prior to receivership."

Counsel for both appellants and appellees seem to concede that Congress must have known that many of the claims covered by the act had been reduced to judgments which bore interest at rates prescribed by the applicable statutes. The congressional silence, counsel for appellants tell us, thus clearly indicates that only the principal amount of each claim should be allowed; for, had Congress intended that interest should be paid, it would have said this clearly and expressly. But, it is urged by counsel for appellees, the term "claim", as used in the act, is broad and comprehensive; hence, as interest is an integral and important element of a claim reduced to judgment, very clearly the whole claim is included, not a mere partial claim—the principal amount shorn of the attendant and closely related interest. In this connection, we might point out that the act is a remedial one and, thus, should be liberally interpreted. In American Surety Co. v. Wabash R. Co., 8 Cir., 107 F.2d 685, 688 (expressly approved in the Carpenter

case), it was said, with reference to this particular act: "This is a highly remedial Act. The rule of construction here applicable is that remedial Acts are to be liberally construed to carry out the remedial purpose thereof. The purpose of this Act is to secure relief for injured employees of railroads which have gone into bankruptcy or receivership after the injury and before satisfaction of the claim therefor against the railroad."

We have found no case precisely in point which adequately discusses and definitely decides the precise problem before us. Many of the cases cited in the briefs, though, are highly interesting and quite instructive. Only a brief review of some of these cases is possible. We believe, however, that the preponderance of authority, as found in these cases, does favor the view that we uphold.

First as to the cases cited by appellants. District of Columbia v. Johnson, 165 U.S. 330, 17 S.Ct. 362, 41 L.Ed. 734, can clearly be distinguished. In that case Congress created the claim; here, the claims already existed, embodied in judgments, and Congress merely gave these claims priority and preference. In Thomas v. Western Car Co., 149 U.S. 95, 13 S.Ct. 824, 39 L.Ed. 663, the claim had not been liquidated, and no definite time for payment had been set. And in St. Louis & O'Fallon R. Co. v. United States, 279 U.S. 461, 49 S.Ct. 384, 387, 73 L.Ed. 798, not until the final order "could the carrier know what, if anything, it should pay." New York Trust Co. v. Detroit T. & I. R. Co., 6 Cir., 251 F. 514, draws the well-known distinction between interest by contract and interest as damages (sometimes called moratory interest), and sets out the familiar principle that the former is more highly regarded by the courts, which, in turn, are more willing to allow it than is the case with the latter. Clearly the interest here sought is moratory interest. This consideration would have much greater force when addressed to a court of equity clothed with more or less unfettered discretion in the allowance of interest (according to widely varying equities) than when it is presented to a court interpreting a remedial statute. Our last remark is important, too, in answering the very earnest contention of appellants that, in no event, should interest on the claims of appellees be allowed between the date of the appointment of the receivers and the effective date of the act; for, we are told, the law itself, not any act (wrongful or otherwise) of the receivers, prevented the payment of the claims of appellees between those dates.

Next as to some of the cases cited by appellees. Mr. Justice Lamar pointed out, in American Iron & Steel Mfg. Co. v. Seaboard Air Line Railway, 233 U.S. 261, 34 S.Ct. 502, 504, 58 L.Ed. 949, that interest is not necessarily stopped because the property of a debtor is in custodia legis; for, he indicated, claims do not lose "their interest-bearing quality during that period", and "if, as a result of good fortune or good management, the estate proved sufficient to discharge the claims in full, interest as well as principal should be paid". In Amis v. Smith, 41 U.S. 303, 310, 311, 10 L.Ed. 973, 976, it was said: "We can see no good reason why interest upon a judgment, which is secured by positive law, is not as much a part of the judgment as if expressed in it." Again, as stated in National Bank of Commonwealth v. Mechanics' Nat. Bank of New Jersey, 94 U.S. 437, 439, 24 L.Ed. 176, 178: "The interest lawfully accruing upon each of the claims was as much a part of it as the original debt. The creditor had the same right to the payment of the one as of the other." To the effect that interest on judgments is a matter of pure legislative discretion and intent, see Morley v. Lake Shore & Michigan Southern R. Co., 146 U.S. 162, 13 S.Ct. 54, 36 L.Ed. 925. As to interest as an essential part of, and an important incident to, the principal amount of the claim, see Ticonic National Bank v. Sprague, 303 U.S. 406, 58 S.Ct. 612, 82 L.Ed. 926; Central Bank & Trust Corp. v. State, 139 Ga. 54, 76 S.E. 587. Rather striking is this language from the opinion in Eddy v. People, 187 Ill. 304, 307, 58 N.E. 397, 398: "The protection which the statute gave to the claim for money received in trust by Bean, as executor of the will of Hooper, extended to the interest upon such money equally with the principal. The object of the statute is to classify debts or claims according to their quality, and the claim embraces the interest on it as well as the principal. If interest should accrue upon moneys received in trust before the allowance of the claim, it would be merged in the judgment, and be an integral part of it, and the interest accruing afterwards is the statutory allowance for nonpayment. In either case it is a mere incident of the principal thing, attaching to it, and not separable from it for the purpose of classification."

Of all the cases cited by appellees, perhaps the one closest to the instant case is Southern Railway Co. v. Bouknight, 4 Cir., 70 F. 442, 30 L.R.A. 823. There a South Carolina statute gave preference to causes of action for personal injury against a railroad company. In that case, however, the priority statute was in effect at the time the mortgage in question was executed. Priority was given to the personal injury claim over the claims of the mortgagees. The opinion (written 'by Chief Justice Fuller, sitting as Circuit Justice) did not discuss the question of interest; however, the priority of the judgment, with interest (70 F. at page 445), was expressly upheld. The opinion of the Circuit Court, written by Judge Simonton, is reported in Central Trust Co. v. Charlotte, C. & A. R. Co., 65 F. 257. See, also, Southern Railway Co. v. Tillett, 4 Cir., 76 F. 507, in which the opinion was again written by Judge Simonton, and in which Judge Morris dissented on the question of the allowance of interest upon the claim in question.

Were we to hold that interest is not allowable here, this would lead to one of two situations. If the appellees must take merely the principal amount of each judgment, with a complete loss of interest, we should then have a remedial statute giving (the principal) with one hand, and taking away (the interest) with the other hand. This hardly seems consistent with the idea of a liberal interpretation of the act. If the act gives priority and preference only to the principal, leaving the interest in the class of other unsecured and unpreferred claims, then the claim of each appellee is, in effect, split into two claims—one preferred, which will be paid, another unpreferred, which (in all probability) will never be paid. Such a result, we believe is, at least, anomalous and irregular.

We are convinced that the payment under the act, both as to principal and interest, of the claims of these appellees (and others similar to them) will not affect the payment of the claims of the holders of the receivers' certificates. It might be pointed out, too, that though the claim of each appellee had been embodied in the solemn form of a judgment, payment of the principal amount has been withheld over a long period of years. During all this period, the railway has enjoyed, and the appellees have been deprived of, the use and benefit of the amount of money included in the principal sum of the judgments duly obtained against the Railway Company by the appellees.

We agree with Judge Way that, under the Act of Congress, the term "claim" includes both the principal amount of the judgments of the appellees and also interest thereon at the prescribed statutory rate, until payment by the receivers.

The statute makes provision for proof of claim by sureties who have signed supersedeas and certain similar bonds, and gives to these claims the same priority and preference accorded to "claims for personal injuries to employees". Such sureties would, we think, be liable for interest as well as for the principal of the judgments; and it is hardly thinkable that Congress intended to grant them only a partial recovery. If such sureties be allowed interest on judgments, there is no adequate reason for denying it to other claimants.

The judgment of the District Court is affirmed.

Affirmed.