EAST TENNESSEE, VIRGINIA AND GEORGIA RAIL-WAY COMPANY *v.* FRAZIER.

ERROR TO THE SUPREME COURT OF THE STATE OF TENNESSEE.

No. 1407. Submitted March 9, 1891. — Decided March 23, 1891.

When the pleadings in the trial court of a State, the assignment of error in the Supreme Court of the State, the opinion of the latter court and its original decree present no federal question, and two days later on

motion of counsel the decree is modified so as to show that a federal question was presented by counsel and decided adversely to their contention, there is color for a motion to dismiss for want of jurisdiction here.

When a charter power is once fully exercised by a corporation, and exhausted, it is, in respect of further contracts and rights of the corporation, as if it had never been granted.

The plaintiff in error having exhausted the power to mortgage its property given by the act of 1847, before its property was mortgaged in 1881, the latter mortgage was made under the then existing laws of Tennessee.

MOTION to dismiss or affirm. The case is stated in the opinion.

*Mr. Henry H. Ingersoll* for the motion.

*Mr. William M. Baxter* opposing.

MR. JUSTICE BREWER delivered the opinion of the court.

This case is submitted on a motion to dismiss or affirm. The facts are these:

The State of Tennessee in 1847 (Acts of 1847–48, page 195) granted a charter of incorporation to the East Tennessee and Virginia Railroad Company. In 1869, this corporation was consolidated with the East Tennessee and Georgia Railroad Company, under the name of the East Tennessee, Virginia and Georgia Railroad Company. This consolidated company, in 1881, executed a mortgage, which in 1886 was foreclosed, and the plaintiff in error, the East Tennessee, Virginia and Georgia Railway Company, as purchaser, took possession of the franchises and property. After this foreclosure and sale, petitions in the nature of creditor's bills were filed in behalf of the defendants in error, judgment creditors of the railroad company, to subject its property in the hands of the purchaser, the railway company, to the satisfaction of their judgments. These judgments were, in point of time, subsequent to the mortgage of 1881, and the question presented was, whether they were superior liens. Such superiority was claimed under and by virtue of a proviso to section 3, of chapter 72 of the Laws of Tennessee of 1877, page 92, which reads: " And pro-

vided further, that no railroad company shall have power
under this act or any of the laws of this State, to give or
create any mortgage or other kind of lien on its railway prop-
erty in this State, which shall be valid and binding against
judgments and decrees and executions therefrom for timber
furnished and work and labor done on, or for damages done
to persons and property in the operation of, its railroad in
this State." By final decree of the chancery court, approved
by the Supreme Court of the State, priority of lien was given
to the appellees' judgments, and satisfaction decreed out of
the property. Of this adjudication of priority, plaintiff in
error complains, and presents as a federal question the propo-
sition that the act of 1877, giving priority to certain judg-
ments over mortgage liens, was an impairment of the con
tractual rights created by the act of 1847. The 15th section
of that act contained this provision: "The said company may
at any time increase its capital to a sum sufficient to complete
the said road, and to stock it with everything necessary to give
it full operation and effect, either by opening books for new
stock, or by selling new stock, or by borrowing money on the
credit of the company, and on the mortgage of its charter and
works." And the contention is, that this section granted the
right to create an absolute first lien by mortgage, which could
not be taken away by subsequent statutes giving priority to
any judgments or claims of date later than the mortgage.
The claim that the act of 1877 was in impairment of contract-
ual rights given by a prior act of the legislature, applicable to
the corporation mortgagor, presents doubtless a federal ques-
tion; and the first matter for our consideration is, whether
there was color for the motion to dismiss. It appears that in
the pleadings filed by the railway corporation, responsive to
the petitions of the appellees, the unconstitutionalty of the
act of 1877 was alleged; but such unconstitutionality was not
predicated on any provision of the United States Constitution,
but solely on those of the constitution of the State. We quote
from the answer to one of the petitions, which, in this respect,
is as full and complete as any:

" Respondent is advised and will insist that the act of 1877,

under which petitioners seek to pursue and appropriate respondent's property to the payment of their claims, and especially the provision of the 3d section of said act, is unconstitutional and void, because said act embraces more than one subject, and the proviso in section 3 aforesaid and the subject of said proviso is not expressed in the title of said act, and because said act is not in compliance with article 2, section 17, of the constitution of this State. And therefore petitioners have no warrant of law for asking satisfaction of their claims from the property mentioned in the original bill."

So upon the pleadings no federal question was presented. Not only that, but in the assignment of error, which was made when the case was taken to the Supreme Court of the State, no reference was made to any federal question; and the unconstitutionality of the act was rested solely upon its supposed conflict with the state constitution. Further, in the opinion of the Supreme Court of the State, reported in 88 Tennessee, 138, which is an elaborate and careful discussion of the questions in the case, the alleged conflict between the act and the state constitution is fully noticed; but nothing is said about any supposed infringement of the federal Constitution. When on October 26, 1889, the decree of the Supreme Court was entered, affirming the ruling of the chancellor as to the liability of the property, the points decided were specifically stated in it, and in them no reference is made to any federal question. Two days thereafter an entry appears on the records of that court, stating that upon application of counsel for the railway company the decree is modified so as to show that upon the argument of the case the question of the invalidity of the act of 1877, by reason of the inhibition of the Federal Constitution, was presented by counsel, and that the decision of the court was adverse to such contention. Upon these facts, we think there was color for the motion to dismiss. The pleadings in the trial court, the assignment of error, the opinion of the Supreme Court and the original decree of that court, contain no reference to any federal question. The invalidity of the act of 1877, in all these proceedings, is placed upon a supposed conflict with the state constitution. Obvi-

ously that was the substantial matter litigated. The fact that two days after the decision the presentation of a federal question was recognized by the Supreme Court, is not to be taken as a declaration that the federal question was a principal one — one which it had theretofore ignored — but rather implies that it was a subordinate and incidental matter, which, though noticed by counsel, was not made the stress of the argument or the burden of complaint. As such a claim had been made, although in a subordinate and incidental way, and although it was a matter which had not arrested its attention, that court, with a delicate sense of justice, caused a statement to be entered of the presentation of this federal question, in order that any rights of review which the railway company might have by reason thereof should not be lost to it. Recognizing the fact that thereby a federal question is presented, it seems so obvious that it was not the bone of contention, the principal matter litigated, but only put into the record for the purpose of an appeal, that it must be adjudged there was color for the motion to dismiss. While that motion must be denied, the motion to affirm is presented for consideration, and upon that we have no doubt.

. Whatever special rights of mortgage were given by the act of 1847 were exhausted. That special right was to increase its capital by the issue of bonds secured by mortgage to a sum sufficient to complete its road, and stock it with everything to give it full operation. It appears that the road authorized by this charter was completed, equipped and in full operation more than twenty-five years before the mortgage of 1881 and long before the consolidation of 1869. Of course when a charter power is once exhausted it is, in respect to further contracts and rights, as though it had never been granted. So, in 1881, when the railroad company executed its mortgage, it was not by virtue of this special grant of power, but by virtue of the general power given by subsequent statutes, and the exercise of such general power must be held subordinate to the terms accompanying its grant. Neither is it of any significance that by legislation prior to 1877 a general power to mortgage had been given to railroad corporations. Until a

general power granted to corporations has been exercised, the terms and conditions under which it may be exercised are subject to legislative control. It may change or modify them as it sees fit, and the law in force at the time the mortgage is executed, with all the conditions and limitations it imposes, is the law which determines the force and effect of the mortgage. That law in this case was the law of 1877, which subordinated the mortgage to the lien of subsequent judgments, for claims of the nature of those held by appellees.

We see no error in the ruling of the Supreme Court of Tennessee, and it is therefore

*Affirmed.*