## UNITED STATES v. MICHAEL.

(District Court, W. D. Texas, San Antonio Division. May 17, 1907.)

No. 1,975.

**1. ARMY AND NAVY—CLOTHING OF SOLDIER—SALE.**

The sale of military clothing issued to a soldier during his term of service constitutes an offense against the military law, for which he may be punished by a court-martial, as provided by the seventeenth article of war, as amended by Act July 27, 1892, c. 272, 27 Stat. 277 [U. S. Comp. St. 1901, p. 947], declaring that any soldier who sells or through neglect loses or spoils his horse, arms, or accoutrements, shall be punished as the court-martial shall adjudge, etc.

**2. SAME—PLEDGE—LIABILITY OF PLEDGEE.**

The receiving in pledge, by a civilian from a soldier, of clothing issued to the latter during the term of his enlistment, does not constitute a penal offense, within Rev. St. § 5438 [U. S. Comp. St. 1901, p. 3675], providing that every person who purchases or receives in pledge from a soldier any arms, equipment, ammunition, clothing, military stores, or other public property, such soldier not having the lawful right to pledge or sell the same, shall be imprisoned, etc., since the clothing on being issued to the soldier becomes his individual property and ceases to belong to the United States.

Charles A. Boynton, U. S. Atty., and Capt. Charles E. Hay, Jr., Acting Judge Advocate, for the United States.

C. K. Brenneman, for defendant.

MAXEY, District Judge (charging jury). It is charged in the indictment that the defendant knowingly received in pledge, for an obligation or indebtedness, from a soldier of the United States, Lucilus H. Turner, in the military service of the United States, stationed at the military post of Ft. Sam Houston, Bexar county, Tex., certain clothes; that is to say, one overcoat of the value of, to wit, $20, the same being public property of the United States, the said soldier aforesaid, to wit, Lucilus H. Turner, not having then and there the lawful right to pledge the same. The indictment is based upon that part of section 5438, Rev. St. [U. S. Comp. St. 1901, p. 3675], which reads as follows:

"And every person who knowingly purchases or receives in pledge for any obligation or indebtedness from any soldier, officer, sailor, or other person called into or employed in the military or naval service, any arms, equipments, ammunition, clothes, military stores, or other public property, such soldier, sailor, officer or other person not having the lawful right to pledge or sell the same, every person so offending in any of the matters set forth in this section shall be imprisoned at hard labor for not less than one nor more than five years, or fined not less than one thousand nor more than five thousand dollars."

It is the evident purpose of the statute to denounce as an offense the purchase or receiving in pledge of public property from a soldier or other person called into or employed in the military or naval service, and the duty devolves upon the court to determine whether the overcoat described in the indictment is public property within the meaning of the law.

The question submitted for consideration is an important one to the government, as well as to the defendant, and its solution is not

altogether free from difficulty. That clothing not issued by the government to a soldier is public property, there can be no doubt; but the facts in this case show that the overcoat in question, when pledged to the defendant, had been issued to Turner, and hence it is claimed by the defendant's counsel that it was Turner's private property. If the contention of the defendant be true, it necessarily follows that your verdict must be in his favor. The question then is: Was the overcoat under the facts and circumstances of this case the private property of Turner, or was it public property within the meaning of the statute? At a former term of this court it was held that clothing, after its issuance to the soldier, was private property, and a verdict of acquittal was instructed by the court. Since that time other courts have placed a different construction upon the statute, and in view of this difference of opinion among judges the question has been examined with unusual care by the court with a view of reaching, if possible, a correct conclusion.

At the outset, it may be well to inquire as to the rule governing the construction of penal statutes. Sutherland on Statutory Construction, § 520, lays down the rule as follows:

"A penal statute cannot be extended by implication or construction. It cannot be made to embrace cases not within the letter, though within the reason and policy of the law. It is axiomatic that statutes creating and defining crime cannot be extended by intendment, and that no act, however wrongful, can be punished under such a statute unless clearly within its terms. Penal statutes can never be extended by mere implication to either persons or things not expressly brought within their terms."

It is said by the Supreme Court, citing United States v. Sharp, Pet. C. C. 118, Fed. Cas. No. 16,264 and United States v. Lacher, 134 U. S. 624, 628, 10 Sup. Ct. 625, 33 L. Ed. 1080:

"Laws which create crime ought to be so explicit that all men subject to their penalties may know what acts it is their duty to avoid. * * * Before a man can be punished, his case must be plainly and unmistakably within the statute." United States v. Brewer, 139 U. S. 288, 11 Sup. Ct. 538, 35 L. Ed. 190.

And by Judge Dillon, in United States v. Whittier, 5 Dill. 39, Fed. Cas. No. 16,688, it is said:

"Statutes creating crimes will not be extended by judicial interpretation to cases not plainly and unmistakably within their terms. If this rule is lost sight of, the courts may hold an act to be a crime when the Legislature never so intended. If there is a fair doubt whether the act charged in the indictment is embraced in the criminal prohibition, that doubt is to be resolved in favor of the accused."

To determine whether the act charged against the defendant is plainly embraced within the statute—that is, whether the overcoat described is public or private property—it is necessary to look to the soldier's contract of enlistment, and to ascertain what the government agrees to pay or furnish the soldier in consideration of the military service to be by him performed. By article 864 of the army regulations of 1904, which have the force and effect of law when sanctioned by the President, and are within the sphere of his legal and constitutional authority (Krutz v. Moffitt, 115 U. S. 503, 6 Sup. Ct. 148, 29 L. Ed. 458; United States v. Eliason, 16 Pet. 291, 10 L.

Ed. 968; United States v. Freeman, 3 How. 567, 11 L. Ed. 724; Gratiot v. United States, 4 How. 118, 11 L. Ed. 884; Davis, Military Law, pp. 6, 7, and note; 16 Op. Atty. Gen. 38), a person upon entering the service of the government, as a soldier, engages, under oath, to accept from the United States, in satisfaction of his services, "such bounty, pay, rations and clothing as are or may be established by law." Enlistment is, properly speaking, a contract between the government and the party entering its service, and before the latter is permitted to sign this contract the recruiting officer is expressly enjoined to explain it to him by article 863 of the army regulations, which is in the following language:

"Recruiting officers will not allow any man to be enticed into the service by false representations, but will, in person, explain to every man before he signs the enlistment paper, the nature of the service, the length of the term, the amount of pay, clothing, rations, and other allowances to which a soldier is entitled by law."

The monthly pay of the soldier is $13 (Rev. St. § 1280 [U. S. Comp. St. 1901, p. 907]), and by section 1296 of the revision the President is authorized to prescribe the uniform of the army and quantity and kind of clothing which shall be issued annually to the troops of the United States. Under this authority tables are issued showing the price of clothing, the allowance in kind to each soldier for each year of his enlistment, thus giving the money value of his clothing allowances, and these are changed from time to time in orders. Dig. Op. Judge Advocates General 1901, par. 828; Army Regulations, art. 1153. The estimated cost of the clothing allowance for the full term of the soldier's enlistment is $165.52. Under his contract of enlistment the soldier is entitled to draw from the government clothing to the amount named, and, if during his term of service he draws less than the amount to which he is entitled, the remainder is payable to him in money upon his final discharge from the service. This is expressly provided for by Rev. St. § 1302 [U. S. Comp. St. 1901, p. 923], which is in the following words:

"The money value of all clothing overdrawn by the soldier beyond his allowance shall be charged against him, every six months, on the muster-roll of his company, or on his final statements if sooner discharged, and he shall receive pay for such articles of clothing as have not been issued to him in any year, or which may be due to him at the time of his discharge, according to the annual estimated value thereof. The amount due him for clothing when he draws less than his allowance, shall not be paid to him until his final discharge from the service."

It will thus be seen that by virtue of the contract entered into between the government and the soldier the latter is allowed certain monthly pay, together with a clothing allowance, the amount of which is fixed under executive authority. Certainly under the contract with the government the soldier is entitled to the money earned by him, and why should not the clothing, issued under the circumstances named, be his property, and not that of the government, although he may not possess the unqualified right of disposition of it during his term of service? The clothing furnished, as well as the money paid him, is supplied by virtue of his contractual relations with the government, and the government would have no more legal right to refuse

the clothing than it would have to withhold his monthly pay. Since the contract of enlistment requires clothing to be furnished to the soldier, it follows that so long as he observes his part of the contract, and refrains from committing a breach of discipline or other offense which might possibly subject the clothing allowance to forfeiture (which is not claimed in this case), his right thereto seems to be beyond question. The clothing issued to a soldier is intended for his use, as a soldier, and quite properly, for disciplinary purposes, its sale by him during his term of service constitutes an offense against military law for which he may be punished as a court-martial may adjudge, subject to the revisory power of the chief executive. Thus it is provided by the seventeenth article of war, as amended by the act of July 27, 1892:

"Any soldier who sells or through neglect loses or spoils his horse, arms, clothing, or accoutrements shall be punished as a court martial may adjudge, subject to such limitation as may be prescribed by the President by virtue of the power vested in him." 27 Stat. 277, c. 272 [U. S. Comp. St. 1901, p. 947]; Davis on Military Law, p. 373; Dig. Op. Judge Advocates General 1901, pars. 5–12.

In the case of the United States v. Hart (D. C.) 146 Fed. 202, the only reported case on this subject brought to the attention of the court, Judge Bethea held that articles of clothing, issued to soldiers while they were employed in the military service of the United States, were public property under Rev. St. § 5438. Referring to the seventeenth article of war and section 3748 of the statutes [U. S. Comp. St. 1901, p. 2527], he observed that those two sections indicated "that the title to clothing issued to soldiers remains in the United States." The prohibition, contained in the seventeenth article of war, is directed against the sale, etc., by a soldier of his horse, arms, clothing, or accoutrements; and, as before stated, for the purpose of maintaining military discipline, the offending soldier is subject to punishment for a violation of the article. "The description," it is said by Judge Advocate General Davis, in his work on Military Law (page 373), " 'his horse, arms, clothing,' etc., refers to articles which are regularly issued to the soldier for his use in the service and with the safe-keeping of which he is charged. His property in them is qualified by the trust that he cannot dispose of them while he is in the military service, and can only use them for military purposes."

Whether clothing issued to a soldier be public or private property, its sale by the soldier is prohibited by the seventeenth article of war. The seventeenth article acts upon the soldier, upon the sale, there being no reference to one who may purchase the clothing, and the court fails to observe any language in this article indicating that clothing issued to a soldier remains, after its issuance, public property.

Let us next examine section 3748 of the Revised Statutes, referred to by Judge Bethea, and endeavor to ascertain its exact bearing upon the question before the court. That section is in the following words:

"The clothes, arms, military outfits, and accoutrements furnished by the United States to any soldier shall not be sold, bartered, exchanged, pledged, loaned, or given away; and no person not a soldier, or duly authorized officer of the United States, who has possession of any such clothes, arms, military outfits, or accoutrements, so furnished, and which have been the subjects of any such sale, barter, exchange, pledge, loan, or gift, shall have any right, ti-

tle, or interest therein; but the same may be seized and taken wherever found by any officer of the United States, civil or military, and shall thereupon be delivered to any quartermaster, or other officer authorized to receive the same. The possession of any such clothes, arms, military outfits, or accoutrements by any person not a soldier or officer of the United States, shall be presumptive evidence of such a sale, barter, exchange, pledge, loan, or gift."

This section, it will be observed, refers to clothes, arms, etc., furnished by the government to the soldier. It prohibits the sale, etc., of such articles; it declares that no person, not a soldier, etc., having possession of the articles, shall have any right, title, or interest therein; it provides for the summary seizure of such articles by any officer, civil or military, and it finally declares that the possession of the articles by any person not a soldier, or officer of the United States, shall be presumptive evidence of a sale, barter, etc. Hence it will be seen that there is nothing in the language of the section defining clothing, furnished to a soldier, to be public property. It merely gives emphasis to the articles of war and other parts of the statutes that the clothing of a soldier may not be sold, bartered, exchanged, pledged, etc., while the soldier remains in the military service; and the only penalty denounced, for the unlawful sale, is the seizure of the articles when found in the possession of one not a soldier or duly authorized officer of the United States. The purchase of such articles is not made a penal offense by the section quoted; the sole punishment to which the purchaser is subjected being the loss of the articles of which he is the purchaser or pledgee.

It may be instructive in this connection to trace the origin of Rev. St. § 3748. See United States v. Lacher, 134 U. S. 626, 627, 10 Sup. Ct. 625, 33 L. Ed. 1080. Upon examination of the statutes it will be seen that it corresponds with section 23 of the act of March 3, 1863, entitled "An act for enrolling and calling out the National forces, and for other purposes." 12 Stat. 735, c. 75. Under section 23 of the act of 1863, as under Rev. St. § 3748, the sale, etc., of clothes, arms, etc., furnished by the United States to a soldier, is prohibited; but seizure is the extent of the penalty which the purchaser incurs by his forbidden purchase. Going back somewhat, and consulting sections 1 and 3 of the act of March 2, 1863 (12 Stat. 697, 698, c. 67), it will be observed that the purchase, etc., by a person not in the military or naval service, of any arms, equipments, ammunition, clothes, or military stores, or other public property, from a soldier, was denounced as an offense. And by section 24 of the act of March 3, 1863 (12 Stat. 735, c. 75), it was provided that:

"Every person, not subject to the rules and articles of war, * * * who shall purchase from any soldier his arms, equipments, ammunition, uniform, clothing, or any part thereof * * * shall be fined," etc.

Section 24, entire, is as follows:

"And be it further enacted, that every person not subject to the rules and articles of war who shall procure or entice, or attempt to procure or entice, a soldier in the service of the United States to desert; or who shall harbor, conceal, or give employment to a deserter, or carry him away, or aid in carrying him away, knowing him to be such; or who shall purchase from any soldier his arms, equipments, ammunition, uniform, clothing, or any part thereof; and any captain or commanding officer of any ship or vessel, or any superintendent

or conductor of any railroad, or any other public conveyance, carrying away any such soldier as one of his crew or otherwise, knowing him to have deserted, or shall refuse to deliver him up to the orders of his commanding officer, shall, upon legal conviction, be fined, at the discretion of any court having cognizance of the same, in any sum not exceeding five hundred dollars, and he shall be imprisoned not exceeding two years nor less than six months."

See, also, Act March 16, 1802, c. 9, § 19, 2 Stat. 136.

Section 23 of the act of March 3, 1863, was carried forward and incorporated into the Revised Statutes, as before intimated, as section 3748; and a portion of section 24 of that act and the act of July 1, 1864 (13 Stat. 343, c. 204), now form section 5455 of the Revised Statutes [U. S. Comp. St. 1901, p. 3682]. Upon comparing section 24 of the act of March 3, 1863 with section 5455 of the Revised Statutes (the act of July 1, 1864 not being relevant in this connection), it will be discovered that the following words of the former were not brought forward by the revisers, to wit: "Or who shall purchase from any soldier his arms, equipments, ammunition, uniform, clothing, or any part thereof." These omitted words, under section 5596 of the Revised Statutes [U. S. Comp. St. 1901, p. 3750] therefore stand repealed. See United States v. Bowen, 100 U. S. 508–513, 25 L. Ed. 631. As these pretermitted words stood in the twenty-fourth section of the act of 1863, as well as in the act of March 16, 1802, the purchase by a civilian from a soldier of his arms, clothing, etc., was denounced as a crime and made punishable by fine and imprisonment. United States v. Brown, 24 Fed. Cas. 1271 (No. 14,669). But there is no existing statute, at least none which the court has been able to discover, denouncing as a penal offense the purchase from a soldier of "his arms, clothing," etc., unless section 5438 of the Revised Statutes be so construed, upon the assumption that the words "his arms, clothing," etc., are embraced within the general description "public property." Just why the omitted words, above mentioned, were not incorporated into the Revised Statutes, it is somewhat difficult to explain. It may be that the omission resulted from oversight, or that Congress deemed the summary seizure of a soldier's clothing, in the hands of a civilian, sufficient punishment for the purchase of the prohibited article. At all events, the omission of the words quoted is significant and tends strongly to indicate that it was not the intention of Congress to denounce as a crime the purchase by a civilian of a soldier's clothing. From the fact that soldiers' clothing may be, under some circumstances, the property of the United States, it by no means follows that "public property" and "soldiers' clothing" are synonymous terms. The one implies public ownership, with title residing in the government of the United States, and hence public property; while the other, after its issuance, imports individual ownership, a title vested in the soldier —in a word, private property. Under sections 1 and 3 of the act of March 2, 1863, above referred to, the purchase of public property, whether clothing or other articles, was expressly made a penal offense, and such is the present law as it stands in section 5438 of the Revised Statutes. But the court is of the opinion that existing statutes fail to punish, as a crime, the purchase by a civilian of a soldier's

clothing, the same being his property, and not that of the government. To hold otherwise in the present case would, it is thought, violate a cardinal principle, applied by the courts, in the construction of penal statutes—that is, that before a man can be punished his case must be plainly within the statute—and, further, that such a statute will never be extended, by mere implication, to things not expressly brought within its terms. The court is further of the opinion, for the reasons given, that an overcoat, issued to a soldier as a part of his clothing allowance, ceases to be public property after its issuance and becomes the property of the soldier, although for disciplinary purposes he may not be invested with the absolute jus disponendi until his discharge from the service. A similar conclusion is expressed by Judge Advocate General Davis in the following language:

"Clothing issued and charged to a soldier is not now (as it was formerly) regarded as remaining the property of the United States. It is now considered as becoming, upon issue, the property of a soldier, although his use of it is, for purposes of discipline, qualified and restricted. Thus he commits a military offense by disposing of it as specified in this article (seventeenth article of war), though the United States may suffer no loss." Davis, Military Law, p. 374.

To the same effect, see Dig. Op. Judge Advocates General, p. 9, par. 11; Id. pars. 824, 382.

To avoid misapprehension it is deemed proper to remark that a civilian may not with impunity purchase from a soldier, in the public service, arms, equipments, ammunition, clothes, military stores, or other property of which the government of the United States is the owner, since the purchase of such property is denounced as an offense by section 5438 of the Revised Statutes. The question, and the sole question, decided by the court, is that the law, as it now stands, does not denounce as a penal offense the purchase, or receiving in pledge, by a civilian from a soldier of the latter's clothing, after the same has been issued to him under the circumstances as shown by the testimony in this case.

From what has been said, it follows that it becomes my duty to say to you that the defendant is not guilty of the offense charged against him, and you are instructed to return a verdict in his favor.