### UNITED STATES v. THAYER.

(District Court, N. D. Texas. June 17, 1907.)

UNITED STATES—OFFICERS—CAMPAIGN CONTRIBUTIONS—SOLICITATION — STATUTES.

Act Cong. Jan. 16, 1883, c. 27, § 11, 22 Stat. 407 [U. S. Comp. St. 1901, p. 1223], prohibits officers and employés of the United States from soliciting or receiving any contribution for any political purpose from any of its officers, clerks, and employés, and section 12 prohibits every person from soliciting such contributions in any room or building occupied in the discharge of official duties by any officer or employé of the United States mentioned in the civil service act, or in any navy yard, fort, or arsenal. *Held*, that the sending of a letter addressed to an internal revenue employé at his office in a federal building by defendant, who was neither an officer nor an employé of the United States, soliciting a political contribution to be sent by mail to the chairman of the Republican state executive committee, did not constitute an offense within such act.

J. M. McCormick and Horace Chilton, for defendant.
Wm. H. Atwell, U. S. Dist. Atty.

MEEK, District Judge. This case is before me on demurrers interposed to the indictment, which contains 11 counts. Each count charges the defendant with a separate violation of the provisions of section 12 of the act of January 16, 1883, c. 27, 22 Stat. 407 [U. S. Comp. St. 1901, p. 1223], known as the "Civil Service Act." All the counts are based upon alleged acts of the defendant so similar in character and effect that, for the purpose of passing upon the demurrers interposed, it will suffice to consider and discuss the allegations of a single count. The charging part of the first count is in part as follows:

"The said Edward S. Thayer, on the date aforesaid, and within the venue aforesaid, did unlawfully, knowingly, and willfully, within the district afore-

said, solicit a contribution of forty-five dollars for political purposes, to wit, for the purpose of conducting the Republican state campaign in the state of Texas, and for the purpose of furthering the interests of the Republican party in the state of Texas, of and from the said Robert Wood, who was then and there occupying the said United States post-office building at Dallas, Tex., in the discharge of the official duties aforesaid of him, the said Robert Wood, which official duties and place of performance thereof were well known to him, the said Edward S. Thayer, which said solicitation of the said sum of money for the aforesaid purpose was made and had and done as aforesaid by him, the said Edward S. Thayer, within the building aforesaid, so occupied by the said Robert Wood in the discharge of his official duties as aforesaid, which said solicitation was then and there effected, had, and made by him the said Edward S. Thayer in the manner following, that is to say, by then and there placing in the mails of the United States for delivery to and reading by the said Robert Wood, within the said building so occupied by him, the said Robert Wood, at Dallas, Tex., a letter in the following words and figures, to wit:

"'6th Republican Senatorial District.

"'Dallas, Texas, Sep. 27, 1906.

"'Mr. Robt. Wood—Dear Sir:   It has become necessary for the Republican state executive committee to raise a campaign fund to be expended in furthering the interests of our party in this state, and it devolves upon me as a member of the Republican state executive committee from your district to at once raise my pro rata of this fund.

"'You are now occupying the position of deputy in the U. S. Rev. Office at Dallas and receiving a salary of $900 00 per year.   I, therefore, ask you to at once, on receipt of this, remit the sum of $45 00, it being %5 of your salary as Dep. U. S. Rev. Officer.

"'This is very important.   As you know, the Terrell Election Law prohibits all federal office holders from holding any position in the political affairs of our party, the present state executive committee is composed of non-office holders, and who have no favors to ask or friends to reward, and are working solely for the good of the cause, and it is incumbent upon you to do your share towards aiding us in our efforts to build up an organization which will be a credit to all.

"'Send your remittance to Cecil A. Lyon, Chairman Republican State Executive Committee, Sherman, Texas, and fill out and detach the coupon below and mail to my address.                                     E. S. Thayer,

"'Member Republican State Executive Committee, 6th Sen. District.

"'I have this day remitted Cecil A. Lyon, 6th Dist. State Chairman, Sherman, Texas, the sum of $4——— as per your request above.

"'_____

"'———, Texas.'

—which said letter was delivered by the said United States mail facilities to, and was read by, the said Robert Wood within the building occupied by him, the said Robert Wood, as aforesaid, and the said letter was enclosed in an envelope bearing a two-cent United States postage stamp, upon which envelope was the following, to wit:

"'After 10 days, return to
    "'E. S. Thayer
        "'Terminal Bldg
"'Dallas, Texas.

```
Dallas, Texas
   Sep 27
  430 PM
   1906
```

"'Mr. Robt Wood
        "'City

"'U S Int Rev Office'

—all of which acts of him, the said Edward S. Thayer, were contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States of America."

The defendant interposes the following demurrers to the indictment:

"First. The alleged facts set forth in said bill of indictment constitute no offense against the laws of the United States.

"Second. Said bill of indictment fails to charge with sufficient certainty that the defendant was present in or about the building in which the alleged solicitations are alleged to have occurred.

"Third. Said bill fails to charge with sufficient certainty that the alleged persons occupying the rooms and building in which the alleged solicitations are charged to have occurred were officers or employés of the United States mentioned in the act of Congress creating the offense."

Section 12 of the civil service act is as follows:

"That no person shall, in any room or building occupied in the discharge of official duties by any officer or employé of the United States mentioned in this act, or in any navy-yard, fort, or arsenal, solicit in any manner whatever, or receive any contribution of money or any other thing of value for any political purpose whatever."

The question is, whether the facts alleged in the counts of the indictment fall within the denunciation of this section and constitute a violation of its provisions. The language used by the Congress is clear and explicit, and there does not seem to be much necessity or room for judicial interpretation to arrive at its meaning and intent. Yet to determine whether the facts here alleged are within its meaning and intent is not without difficulty. From a consideration of this indictment and the divergent views expressed by opposing counsel at the hearing and in briefs, I am impressed with the profound truth of the observations of Dwarris:

"Nearly every case is, in reality, a complex one, and because the various relations of men are forever changing, and because the individuality of utterances, with the expressions of ideas, is dependent upon uniformity of mental endowments as well as uniformity of culture, which are seldom or never to be found. Interpretation never has been, it never can be, dispensed with. It is a necessity that lies in the very nature of things, and will remain so long as the character of the human mind is diversified and language remains imperfect." Potter's Dwarris on Statutes and Constructions, p. 116.

Notwithstanding the civil service act has been a part of our statute law since January 16, 1883, there has been, so far as I can find, no construction of the provisions of section 12 by any of our courts. The object of the entire act, as given expression in its caption, is "To regulate and improve the civil service of the United States." Section 11 prohibits the direct or indirect soliciting or receiving by officers and employés of the United States of any assessment, subscription, or contribution for any political purpose whatever from any of its officers, clerks, or employés. It also prohibits their being in any manner concerned in such soliciting or receiving. The prohibitions of this section reach and apply to only those who are in the employ of the government. Other persons than these are not included in nor affected by its provisions, but are left free to solicit and to receive contributions from officers and employés of the government for political purposes.

Section 12, however, prohibits every person from the pursuit of these activities in any room or building occupied in the discharge of official duties by any officer or employé of the United States mentioned

in the civil service act, or in any navy yard, fort, or arsenal. It is plain that the place of solicitation or of receiving is the gravamen of the offense under the provisions of this section. For a person other than those named in section 11, to solicit or receive money from any officer or employé mentioned in the act for a political purpose is no offense. To solicit in any manner whatever, or to receive any money for a political purpose from any person in a prohibited room or building, is an offense. A fair reading and construction of the charging part of the indictment leads to the conclusion that it was not intended to charge that the defendant, Thayer, was personally present in or about the United States post-office building at Dallas when he made the alleged solicitation, and it was conceded by the government on the argument that he was not so personally present, but that, being absent therefrom, he wrote a letter for this purpose to Robert Wood, and inclosing it in a stamped envelope, deposited it in the United States mail for transmission and delivery to the addressee. Did such acts on the part of the defendant constitute an unlawful solicitation within the meaning of section 12? As set forth, the solicitation was comprised of at least four distinct acts or steps, each of which was necessary to its accomplishment: First, the writing of the letter by Thayer; second, the depositing of it in the mail; third, its transmission and delivery by the mail facilities; fourth, the reading of the letter by the addressee, Robert Wood.

There can be no question as to the character of the letter. It is a solicitation to the extent of being an importunate demand. The effort in composition seems to have been to impress the addressee that a certain authority was vested in the writer, an authority wholly lacking in point of fact. Unaccustomed familiarity with the terms of employment is displayed. The position and exact salary of Wood are stated, and then, as though it followed as a logical sequence, he is asked to at once remit the sum of $45, it being 5 per cent. of his salary as deputy revenue officer. The letter impresses me as an unwarranted request, made in an offensively importunate manner. But Thayer had the legal right to make such solicitation from Wood. It was manifestly no violation of the law to write such a letter, nor to place it in the mail for transmission and delivery to the addressee, nor for the latter to receive it into his hands, even in the United States post-office building at Dallas. If this series of acts culminated in the commission of an offense, it was because the letter was read by Wood in this building. Such reading was the consummation of the solicitation, and if such consummation rendered the defendant guilty of an offense it was because it imparted to each and all of the acts in the series looking to such consummation a criminal design. The design to do unlawfully that which he could, in any other than the prohibited places, do lawfully, is to be gathered and inferred alone from the placing on the envelope in which the letter was inclosed "U. S. Int. Rev. Office," for this is all the defendant is charged to have done looking to the reading of the letter in the proscribed precincts.

When, in contemplation of law, did the letter cease to be the property of the defendant, and for whom was the post-office establishment acting in forwarding and delivering it? By quite a uniform line of

decisions it is held that after a letter is placed in the post office it passes out of the control of the sender and into that of the person to whom it is directed, and the postmaster or the Post-Office Department is his agent to forward the letter to him. 22 American & Eng. Enc. of Law (2d Ed.) 1057; U. S. v. Nutt, Fed. Cas. No. 15,904; Com. v. Wood, 142 Mass. 459, 8 N. E. 432; Regina v. Jones, 4 Cox, C. C. 198; Kennedy v. Dr. David Kennedy Corp., 32 Misc. Rep. 480, 66 N. Y. Supp. 225. If this be true, the defendant was not the owner and had no control over the letter after it was confided by him to the mails of the United States. Thereafter it was the property of the addressee, and in the possession of his agent for forwarding. The agent may have been assisted and guided in the delivery of the letter by the notation on the envelope. Nevertheless, the delivery at the place whereof was the act of the agent of the addressee, and not the act of the defendant or of the latter's agent. Therefore, the letter was not carried into nor delivered to the addressee in the building by the defendant or by any one acting for him. It is manifest that the main purpose of an address is to reveal identity and location so as to insure certainty and promptness of delivery. It would be going far to say that particularity of address was indulged in a given case for the purpose of controlling and fixing the place in which a letter should be read; that by placing on the envelope, in addition to "Mr. Robt. Wood, City," the notation "U. S. Int. Rev. Office," the writer could be charged with entertaining a criminal design to accomplish and consummate the solicitation in a proscribed precinct. The place of reading a letter is a matter entirely within the control and discretion of the addressee, and entirely beyond the control of the writer. So that, according to the contention of the government, a person is guilty of a violation of law, or he is not guilty, according as the addressee may exercise his discretion and pleasure by reading the letter of solicitation within the proscribed precincts, or without them.

A construction of a criminal statute, enacted in derogation of our natural rights, which converts acts otherwise innocent into offenses through the subsequent and independent act of another party should not, in in my opinion, be entertained. But in any event, could there be a violation of the provisions of section 12 without the personal presence in the prohibited place of the one soliciting or receiving? It is true the section does not read "that no person shall, being in a room or building," but a close analysis of the language of the section and a consideration of its purpose and object seem to me to give support to this view. As stated, the gravamen of the offense is soliciting or receiving in designated places, to wit, "in any room or building occupied in the discharge of official duties by any officer or employé of the United States mentioned in this act, or in any navy-yard, fort, or arsenal." The section does not alone make it an offense to solicit or receive from any officer or employé of the United States within the prohibited places. Under its plain language it is an offense to solicit or receive from any person within these places. This being true, it would be a violation of the act for A. to solicit or receive a contribution from B. in the United States post-office building at Dallas, even though B. was not connected in any manner either by service or employment with the

United States. If the contention of the government were correct, if B. should receive such a letter of solicitation in that building addressed to him care of the general delivery, and read it there, the writer would be guilty of violating this law. Congress could not have had any such result as this in contemplation, nor does such result tend to promote the expressed object of the act "to improve the civil service." On the other hand, Congress may well and wisely have intended to protect not only officers and employés of the government, but the public as well, from the personal intrusions and importunities of solicitors in precincts under its control. This would also be in consonance with the object of the act.

Two offenses are created and denounced by this section: The offense of soliciting, and that of receiving. These are correlative offenses, mutually related in significance. One is not likely to receive without having solicited. To receive contributions in a place, one must personally be present, or at least be present through another. It may be that by placing these two offenses in such close apposition the Congress intended that personal presence, which was a necessary element of the offense of receiving, should also be a necessary element of the offense of soliciting, although this does not logically or necessarily follow. However, the conviction is strong with me that all the essential elements of the solicitation, whatever they may be, should be enacted within the prohibited precincts before there can be a violation of this law. It is a well-settled rule that courts should so construe statutes "as to meet the mischief and advance the remedy." What was the mischief to be met by this enactment? It seems to me to be revealed by the provisions of section 11. If I mistake not, it was to guard and protect employés against official pressure on the part of their superiors. Section 11 designates specifically the officers and employés who may not in any place, or in any manner, solicit or receive, or be interested in soliciting or receiving, from any officer or employé of the government, any contribution for political purposes. It would have been a futile and vain thing to have enacted the provisions of section 11 and left the doors and entrances of the government offices, buildings, and reservations open to the friends and party associates of officers and employés that they might enter to solicit and receive contributions from inferiors under the very eye and with the countenance of their superiors. With such conditions obtaining, pressure and coercion could still be exercised in a form most odious. Hence the necessity for the enactment of section 12. When the exclusion of the person of the solicitor is accomplished, pressure and coercion are rendered impossible, at least in the prohibited precincts.

The act itself should be sounded for its intent and meaning, and these should be gathered therefrom; yet owing to the direct bearing certain of the deliberations of the Senate of the United States have upon the question now under consideration, I feel justified in at least making reference to them here. Section 12 being under consideration by the Senate, an amendment coming in the nature of an amendment to an amendment was offered which "provided, that the sending by mail or otherwise to any such officer or employé of any letter, or note, whether written or printed, containing such solicitation, shall be held

to be a solicitation prohibited by this section." This amendment was rejected. This action seems to shed light upon the intention of the Congress. It may be said the amendment was rejected because the acts designated by it were already covered by the general language of the section. If it was the intention to include the use of the mails, the adoption of the amendment would have made it plain and unmistakable; without the amendment, such intention is matter of gravest doubt. "Laws which create crime ought to be so explicit that all men subject to their penalties may know what acts it is their duty to avoid. Before a man can be punished, his case must be plainly and unmistakably within the statute." U. S. v. Brewer, 139 U. S. 288, 11 Sup. Ct. 538, 35 L. Ed. 190. While it is the duty of courts to so construe statutes as "to meet the mischief and advance the remedy," that duty should not lead to the inclusion of a gravely doubtful case.

Without entering upon any extended consideration of the objection raised by the third demurrer above set forth, I will overrule it. Demurrers numbered 1 and 2 will be sustained.